*M. C. Barwick,* contra.

RICHARDSON, tax-collector, *et al.* v. CITIZENS TRUST CO.

No. 9078.   FEBRUARY 22, 1933.

*George M. Napier, Lawrence S. Camp, attorneys-general, T. R. Gress, assistant attorney-general, Frank Carter,* and *W. K. Meadow,* for plaintiffs in error.

*A. T. Walden* and *Anderson, Rountree, Crenshaw & Hansell,* contra.

RUSSELL, C. J. We are of the opinion that the tax sought to be collected for the years indicated is not in any sense an ad valorem tax. It is not imposed or collected upon the basis of the value of property of domestic corporations or the value of their shares of stock. It is a tax proportioned according to the amount constituting their capital stock, regardless of whether the value of their capital stock has been increased or diminished since the organization of the corporation. It is not imposed upon banking corporations especially, but upon all corporations chartered by the laws of Georgia, and as such subject to regulation and afforded protection by its laws. It is a license fee for the privilege of engaging in business as a domestic corporation. The law requires domestic banking corporations, in common with all other domestic corporations chartered by the State, no matter what may be the principal object and purpose for which the corporation was created, to contribute this corporation license tax to the support of the State government, in the exercise of the police power of the State. We are of the opinion that the court erred in granting an injunction. The license tax

is not discriminatory. The legislature has the right to classify businesses for the purpose of taxation, and the classification so fixed can not be declared void unless it is unreasonable, arbitrary, or discriminatory as enacted or as administered. The method of administering the law may sometimes render it subject to one or more of these criticisms. But the fact that an occupation tax imposed by the General Assembly may not reach all who may be included within the class, due to the fact that they have been exempted by law, does not evidence any discrimination, or that the ordinance is discriminatory merely because an exemption ordained by a higher law prevents the operation of the occupation or license tax. This has been held even as to ad valorem taxation, which is required to be "uniform upon all classes of subjects, and ad valorem on all property subject to be taxed." Constitution art. 7, sec. 2, par. 1. And yet much property subject to ad valorem taxation, and not to license fees or occupation taxes, is exempted. The fact that the regulation does not reach every member of the class which the law designed to reach does not render the requirement void as to those who are not exempted. If one owns a piece of real estate and the law fixes a liability upon him for a tax according to the value of the property, can it be said that this regulation is void and that he is relieved from the liability by reason of the fact that an adjoining tract of land is occupied by a schoolhouse, a church, a college? Can it be said, because the Federal government owns various valuable (some of them extensive) pieces of real estate in Fulton County and in various parts of Georgia, which by the Federal law are exempt as agencies of the Federal government, and because all real estate can not be included within the class subject to ad valorem taxes, the tax upon this property would be an unjust discrimination, and that therefore the tax would fail? We think not.

Under the facts shown by the pleadings before the trial judge, the issue in this case resolves itself into a question of law, and it must be determined whether sec. 2, par. 48, of the act of 1923, and sec. 2, par. 44, of the act of 1927, are unconstitutional and in violation of art 7, sec. 2, par. 1, of the constitution of Georgia of 1877, or of the fourteenth amendment to the constitution of the United States. The act of 1923 (Ga. L. Ex. Sess. 1923, pp. 34-35, sec. 2, par. 48) is in the following language: "Corporations, Domestic. All corporations incorporated under the laws of Georgia shall, ex-

cept those that are not organized for pecuniary gain or profit, and those that neither charge nor contemplate charging the public for services rendered, in addition to all other taxes now required of them by law, are hereby required to pay each year annual license or occupation tax as specified in the following scale:" Then follows a schedule of taxes to be paid by such corporations, ranging from $10 on corporations whose capital stock does not exceed $10,000 to $1,000 where such capital stock exceeds $6,000,000. The provisions of the act of 1927 (Ga. L. 1927, pp. 69-70, sec. 2, par. 44) are the same as the act of 1923 just quoted. The act of 1923 (Ga. L. Ex. Sess. 1923, p. 65, sec. 11) is as follows: "Banks. Be it further enacted by the authority aforesaid, that no tax shall be assessed upon the capital of banks or banking associations organized under the authority of this State, or of the United States, located within this State, but the shares of the stockholders of the banks or banking associations, whether resident or non-resident owners, shall be taxed in the county where the bank or banking associations are located, and not elsewhere, at their full market value, including surplus and undivided profits, at the same rate provided in this act for the taxation of other property in the hands of private individuals. Provided, that nothing in this section contained shall be construed to relieve such banks or banking associations from the tax on real estate held or owned by them, but they shall return said real estate at its true market value in the county where located. Provided, further, that where real estate is fully paid for, the value at which it is returned for taxation may be deducted from the market value of their shares, and if said real estate is not fully paid for, only the value at which the equity owned by them therein is returned for taxation shall be deducted from the market value of their shares. The bank or banking associations themselves shall make the returns of the property and the shares therein mentioned and pay the taxes herein provided. Branch banks shall be taxed on the value of the capital employed in their operation, in the counties, municipalities, and districts in which they are located, and the parent bank shall be relieved of taxation to the extent of the capital set aside for the exclusive use of such branches." The provisions of the act of 1927 (Ga. L. 1927, pp. 99-100, sec. 11) are the same as the act just quoted.

In view of what we have said, we are of the opinion that section

2, paragraph 48, of the act of 1923 (Ga. L. Ex. Sess. 1923, pp. 34-35), and section 2, paragraph 44, of the act of 1927 (Ga. L. 1927, pp. 69-70), to which we have referred, are not unconstitutional as in violation of article 7, section 2, paragraph 1, of the constitution of Georgia of 1877, or of the fourteenth amendment to the constitution of the United States. So far as material to the question now before us, there is nothing in section 11 of the act of 1923 (Ga. L. Ex. Sess. 1923, p. 65), or section 11 of the act of 1927 (Ga. L. 1927, pp. 99-100), which conflicts with either article 7, section 2, paragraph 1, of the constitution of Georgia, or the fourteenth amendment to the Federal constitution. Indeed, the constitutionality of section 11 of the acts of 1923 and 1927 which we have quoted is conceded. The contention of the defendant in error, and the view no doubt entertained by the court below, is that the provisions of section 11 of the act of 1923 are the exclusive methods prescribed for the taxation of banks, and for that reason the provision requiring each year an annual license or occupation tax is unconstitutional and void. We think that instead of there being conflict between these acts, their provisions are not inconsistent, and may readily be harmonized. Section 11 of the act of 1923 declares "That no tax shall be assessed upon the capital of banks . . organized under the authority of this State, or of the United States, . . but the shares of the stockholders shall be taxed in the county where the bank . . is located, . . at their full market value, . . at the same rate provided in this act for the taxation of other property in the hands of private individuals." It is plain that this enactment deals only with uniformity as to ad valorem taxation. It says the shares of stockholders shall be taxed in the county where the bank is located, and at the same rate of taxation as of other property in the hands of private individuals. There is in this no hint that the act is intended to affect the special occupation or license tax, which is altogether distinct and different from taxation of other property in the hands of private individuals. Under the occupation taxes imposed in this case, private individuals are placed in an entirely different class from domestic corporations, including banks which are domestic corporations. That section 11 is not exclusive of all other taxes is shown by the next provision of the act, "That nothing in this section contained shall be construed to relieve such banks . . from

the tax on real estate held or owned by them, but they shall return said real estate at its true market value in the county where located." Though the value that is returned upon the real estate, wherever situated, may be deducted from the market value of all of their shares, nothing is said of anything but ad valorem taxes; for it is provided that "The bank or banking associations themselves shall make the returns of the property and the shares therein mentioned and pay the taxes herein provided." Except for the allowance of the deduction for such portion of the ad valorem tax as might be due upon real estate owned by the bank from the market value of the shares (which must of necessity include the value of the real estate), there is no difference between the property of banks and the property of all other domestic corporations and of individuals. However, as we have stated, there is not a line which speaks of occupation license taxes, or either expressly or impliedly excludes a banking corporation in Georgia from such liability as is imposed upon a corporation engaged in selling or finishing lumber, or manufacturing rough lumber. The act speaks entirely of ad valorem taxes. That the national government may have some law which prohibits the assessment or collection of license taxes on national banks does not affect the question in this case, because we are not dealing with aught else than domestic corporations, and national banks are Federal corporations, created, regulated, and if need be protected, by Federal regulations. In this State the Federal law is paramount in its operation as to all agencies of the Federal government. With this fixed principle the State is powerless to interfere. The fact that the State is powerless to impose a license occupation tax upon corporations created by the United States does not work a discrimination as among those corporations upon which it is empowered to impose occupation taxes. The State is impartially administering its occupation license fee when it collects this fee from all of the class who are within its jurisdictional power. The State does not discriminate when it imposes this occupation license tax upon all of those included in the class of domestic corporations except those who may be excluded from the class by the paramount power of the United States. McCulloch v. Maryland, 4 Wheat. 316 (4 L. ed. 579).

We are of the opinion that the learned trial judge erred in granting an injunction. *Judgment reversed. All the Justices concur.*