FEDERAL RESERVE BANK OF CHICAGO *v.*
DEPARTMENT OF REVENUE.

1. TAXATION—SALES—CORPORATIONS NOT WHOLLY OWNED BY UNITED STATES.

The general sales tax act does not excuse retailers from including in the amount of their gross proceeds used for computing their annual tax for the privilege of engaging in the retail business any proceeds derived from sales to an incorporated instrumentality of the United States which is not wholly owned by the United States (CL 1948, § 205.54, as amended by PA 1949, No 272).

2. SAME — SALES — CLASSIFICATION — GOVERNMENT-OWNED CORPORATIONS.

The difference between a corporation wholly owned by the United States and a corporation owned by private persons or corpo-

REFERENCES FOR POINTS IN HEADNOTES

[2] 51 Am Jur, Taxation § 187.
[3] 51 Am Jur, Taxation § 557.
[4] 51 Am Jur, Taxation § 520.
[5] 47 Am Jur, Sales and Use Taxes § 2.
[6] 14 Am Jur, Courts §§ 90, 99; 54 Am Jur, United States Courts § 350.
[7] 47 Am Jur, Sales and Use Taxes § 20.
[8] 47 Am Jur, Sales and Use Taxes § 13.
Sales tax on Federal and State Governments and instrumentalities. 117 ALR 855.
Sales tax on goods purchased by, or for benefit of, the Federal Government. 140 ALR 621.
[9] 51 Am Jur, Taxation § 525.

rations and operated, in part, for their benefit affords a valid
basis for a difference in classification whereby sales to former
need not be included in computing annual tax on gross pro-
ceeds of retailers but sales to latter must be included in such
computation (CL 1948, § 205.54, as amended by PA 1949,
No 272).

3. SAME—EXEMPTIONS—GOVERNMENTAL UNIT—PROPERTY DEVOTED
TO PUBLIC USE—DUE PROCESS—EQUAL PROTECTION.

Provisions of a tax act exempting governmental units or property
devoted to public use do not render it invalid as a denial of
due process or equal protection of the law (CL 1948, § 205.54,
as amended by PA 1949, No 272).

4. SAME—EXEMPTIONS—CLASSIFICATION—ECONOMIC BURDENS.

The tax-levying power vested in the legislature includes the power
to exempt therefrom so long as classifications made for that
purpose are based on substantial distinctions and are in ac-
cord with the aims sought to be achieved by the act, such
as avoidance of passing the economic burdens of the general
sales tax act to the United States or agencies wholly owned
by it (CL 1948, § 205.51 et seq., as amended).

5. SAME—SALES—ECONOMIC BURDEN—LEGAL INCIDENCE OF TAX.

The direct legal incidence of the general sales tax, and to some
extent its economic burden, falls upon the retailer and is
imposed upon him for the privilege of engaging in the retail
business, but its economic burden falls chiefly upon the con-
sumer (CL 1948, § 205.51 et seq., as amended).

6. COURTS—INCIDENCE OF STATE TAX.

The determination of the incidence of a State tax by the State
court is controlling upon the supreme court of the United
States.

7. SAME—FEDERAL QUESTION—TAXATION OF PRIVATELY-OWNED UNIT-
ED STATES CORPORATION—STATE SALES TAX.

The determination of whether or not the implied immunity or
statutory exemption of a Federal reserve bank, a United States
corporation owned by private corporations and operated, in
part, for their benefit, extends to its shouldering of the
economic burden of a State general sales tax whose legal
incidence rests on the retailer who sells to the bank is a
Federal question, controlled by such decisions of the supreme
court of the United States as may be decisive of the question
(12 USCA. § 531; CL 1948, § 205.54, as amended by PA
1949, No 272).

8. TAXATION—STATE SALES TAX—FEDERAL RESERVE BANK—CONSTRUCTION OF STATUTES—DECISIONS OF SUPREME COURT OF UNITED STATES.

> The economic burden of the State general sales tax, the legal incidence of which is imposed upon a retailer within this State, may be passed on to a Federal reserve bank, a United States corporation which is owned by private corporations and operated, in part, for their benefit, notwithstanding Federal statute specifically exempting the capital stock, surplus and income derived therefrom from Federal, State and local taxation, except taxes upon real estate, but not exempting the intermediate party upon whom the legal incidence ·of the tax falls, pursuant to decisions of the supreme court of the United States (12 USCA, § 531; CL 1948, § 205.54, as amended by PA 1949, No 272).

9. SAME—EXEMPTIONS—CONSTRUCTION OF STATUTES.

> Exemptions from taxation will not be read into a tax law by implication.

10. WORDS AND PHRASES—STATUTES—CONTRACTS.

> Language is the substance of which statutes, contracts and many other legal relationships are made.

11. TAXATION—ECONOMIC BURDEN—EXEMPTIONS—LEGAL INCIDENCE.

> The party upon whom the economic burden of a tax falls may not be exempted from a State tax unless also exempted from the legal incidence of the tax.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted April 14, 1954. (Docket No. 41, Calendar No. 46,010.) Decided June 7, 1954.

Bill by Federal Reserve Bank of Chicago, a United States corporation, against Department of Revenue of the State of Michigan, under statutory provisions for declaration of rights, praying *inter alia,* that its suppliers be exempt from tax on sales of tangible personal property to it. Decree for defendant. Plaintiff appeals. Affirmed.

*Paul C. Hodge* and *Gordon W. Lamphere,* for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *T. Carl Holbrook* and *William D. Dexter,* Assistants Attorney General, for defendant.

DETHMERS, J.   Need persons engaged in the business of making sales at retail who are subject to a tax (Michigan sales tax) under PA 1933, No 167 (CL 1948, and CLS 1952, § 205.51 *et seq.* [Stat Ann 1950 Rev and 1953 Cum Supp § 7.521 *et seq.*]) include in the amount of their gross proceeds used for the computation of the tax any proceeds of their business derived from sales to plaintiff?

Plaintiff is a United States corporation, an instrumentality and agent of the Federal government, organized and existing under the Federal reserve act (38 Stat 251 [12 USCA, § 221 *et seq.*]).   Its stock is owned by those commercial banks which are members of the Federal reserve system and located in the seventh Federal reserve district.   From its net earnings the stockholders are entitled by law to receive an annual dividend of 6% on the paid-in capital stock, after payment of which approximately 90% of its net earnings are lawfully turned over annually to the United States treasury.   Upon dissolution, after payment of debts, stockholders are entitled to the return of the par value of their stock, and any remainder goes to the United States government.   A major portion of plaintiff's operations consists of furnishing services as fiscal agent, depository, and custodian for the United States government, and for most of such services it is reimbursed by the United States.

Pertinent provisions of the Michigan sales tax act are :*

"Sec. 2. There is hereby levied upon and there shall be collected from all persons engaged in the business of making sales at retail  *  *  *  an annual tax for the privilege of engaging in such business equal to 3 per cent of the gross proceeds thereof  *  *  *  less deductions allowed in sections 4.  *  *  *

"Sec. 4.  *  *  *  No person subject to a tax under this act need include in the amount of his gross proceeds used for the computation of the tax any proceeds of his business derived from sales to the United States, its unincorporated agencies and instrumentalities, any incorporated agency or instrumentality of the United States wholly owned by the United States or by a corporation wholly owned by the United States.  *  *  *

"Sec. 23. No person engaged in the business of selling tangible personal property at retail shall advertise or hold out to the public in any manner, directly or indirectly, that the tax herein imposed is not considered as an element in the price to the consumer. Nothing contained in this act shall be deemed to prohibit any taxpayer from reimbursing himself by adding to his sale price any tax levied hereunder."

It is evident that retailers are not excused by the provisions of section 4 of the act from including in the amount of their gross proceeds used for the computation of their annual tax for the privilege of engaging in the retail business any proceeds of their business derived from sales to plaintiff because it does not fall within the classification of any of the entities specified in that section, but, on the contrary, is an incorporated instrumentality of the United States which is not wholly owned by the United States. We are not persuaded by plaintiff's contention that the exempting provisions of section 4 ren-

---

* CL 1948, §§ 205.52, 205.54, 205.73, as amended by PA 1949, No 272 (Stat Ann 1950 Rev §§ 7.522, 7.524, 7.544).—Reporter.

der the act unconstitutional as class legislation because they apply to proceeds derived from sales to the United States, its unincorporated instrumentalities and incorporated instrumentalities if wholly owned by the United States but not to its instrumentalities if incorporated but not wholly owned by the United States. We think that the difference between a corporation wholly owned by the United States and a corporation owned by private persons or corporations and operated, in part, for their benefit affords a valid basis for a difference in classification. In *Banner Laundering Co.* v. *State Board,* 297 Mich 419, we quote with approval from 26 RCL, pp 253, 255, Taxation, §§ 224, 225, to the effect that provisions of a taxing act exempting governmental units or property devoted to public use do not render it invalid as a denial of due process or equal protection of the laws. For reasons of fact, public policy and constitutional considerations the distinction is warranted. If it be the legislative intent, in imposing the tax, to avoid passing the economic burden thereof to the United States or agencies wholly owned by it but to permit that burden to pass to its agencies owned entirely or in part by private interests, as in the case of all other private purchasers, we discern therein no arbitrary or discriminatory classification. The tax-levying power vested in the legislature includes the power to exempt therefrom so long as classifications made for that purpose are based, as here, on substantial distinctions and are in accord with the aims sought to be achieved by the act. For an analysis of the types of exemptions in a taxing act which are held to leave the act valid see *Lucking* v. *People,* 320 Mich 495, 504, and cases there cited.

Plaintiff contends that, regardless of the provisions of the State act, retailers need not include in the amount of their gross proceeds used for the computation of the annual sales tax to be paid by them

the proceeds derived from sales to it because of its implied constitutional immunity to State taxation and its express exemption therefrom under section 7 of the Federal reserve act, which reads in part as follows:

"Federal reserve banks, including the capital stock and surplus therein and the income derived therefrom, shall be exempt from Federal, State, and local taxation, except taxes upon real estate." 12 USCA, § 531.

Defendant answers this contention of plaintiff with the assertion that it is the retailer, not the purchaser, who is legally obligated to pay the tax under the Michigan sales tax act and that the plaintiff's immunity and exemption privileges have no application to the obligation of the retailer to pay such tax on his gross proceeds even though they include proceeds derived from sales to plaintiff. It is important to note here that, as distinguished from the sales tax act provisions of some of the other States, the Michigan statute does not require the retailer to collect the tax from the purchaser or consumer. Plaintiff points, however, to the provisions of section 23 of the Michigan act prohibiting the retailer from representing to the public that the tax is not considered as an element in the price to the consumer and permitting him to add it to his sale price. Testimony for plaintiff is that such addition is the general practice of Michigan retailers and that some of plaintiff's suppliers are unwilling to make sales to it unless plaintiff pays them an amount equal to such tax in addition to the regular sales price. Accordingly, plaintiff says that if retailers were to be required to pay the tax on proceeds from sales to it they would pass its burden on and plaintiff would, in fact, be compelled to be the taxpayer in violation of its im-

plied immunity and express exemption from State taxation.

The question presented is novel in Michigan. Both parties cite *National Bank of Detroit* v. *Department of Revenue,* 334 Mich 132. We did not there decide the main question now before us, but only that it was a justiciable one which the plaintiff therein was entitled to have adjudicated. In arriving at that conclusion, as a necessary premise thereto, we held that the direct legal incidence of the tax, and to some extent its economic burden, falls upon the retailer, imposed upon him for the privilege of engaging in the retail business, but that its economic burden falls chiefly upon the consumer. In *Federal Land Bank of St. Paul* v. *Bismarck Lumber Co.,* 314 US 95 (62 S Ct 1, 86 L ed 65), the supreme court of the United States held, "These determinations of the incidence of the tax by the State court are controlling." To be determined, accordingly, is whether the implied immunity or statutory exemption enjoyed by plaintiff extends to its shouldering of the economic burden of a tax whose legal incidence rests on the retailer who sells to plaintiff. That being a Federal question, we are bound by such decisions of the United States supreme court as may be in point and decisive. We turn, therefore, to a consideration of the decisions of that court.

Plaintiff's reliance is placed on *Carpenter* v. *Shaw,* 280 US 363 (50 S Ct 121, 74 L ed 478) ; *Richfield Oil Corp.* v. *State Board of Equalization,* 329 US 69 (67 S Ct 156, 91 L ed 80) ; *Colorado National Bank of Denver* v. *Bedford,* 310 US 41 (60 S Ct 800, 84 L ed 1067) ; *Federal Land Bank of St. Paul* v. *Bismarck Lumber Co.,* 314 US 95 (62 S Ct 1, 86 L ed 65) ; and *Carson* v. *Roane-Anderson Co.,* 342 US 232 (72 S Ct 257, 96 L ed 257). *Carpenter* and *Richfield* support plaintiff's position that while the construction placed by the State court on the State taxing act is

binding on the supreme court of the United States even to the extent of a State determination, as in *Richfield* and here, that the tax is an excise for the privilege of conducting a retail business and not a tax laid on the consumer, nonetheless the State construction is not determinative of the question of whether the tax violates a Federal right, that issue turning not on the characterization which the State gives the tax but on its operation and effect. This is in no sense inconsistent with the noted holding in *Bismarck,* expressly reaffirmed in *Richfield,* that the determination of the State court as to the incidence of the tax is controlling so long as it is recognized, as we do, that it remains open for Federal determination whether, with the incidence of the tax being where the State court holds it to be, the passing of its economic burden to another violates the latter's Federal rights. It is noteworthy that in both *Carpenter* and *Richfield* the legal incidence of the tax in question, not merely its economic burden, fell on the parties whose Federal rights were asserted to have been violated thereby. *Carpenter* and *Richfield* are not determinative, therefore, of the question of whether plaintiff's immunity and exemption extends to the passing of the economic burden to it by the retailer who bears the legal incidence of the tax. In *Bedford, Bismarck* and *Roane-Anderson* the State taxing acts involved required, as distinguished from the Michigan act, that the retailer or party liable to the State for the tax collect the same from the consumer; hence, in those cases the legal incidence of the tax, as well as its economic burden, fell, in each instance, upon a consumer who enjoyed an express exemption from State taxation by act of congress. In consequence, these cases are not determinative of the question of plaintiff's immunity to or exemption from the economic burden of the Michigan sales tax. Much less are any of these 5

cases cited by plaintiff decisive of the extent of the obligation of the retailers in question here to pay to defendant an annual tax for the privilege of engaging in the retail business.

Defendant, in turn, urges as controlling the following: *James* v. *Dravo Contracting Co.,* 302 US 134 (58 S Ct 208, 82 L ed 155, 114 ALR 318); *Alabama* v. *King & Boozer,* 314 US 1 (62 S Ct 43, 86 L ed 3, 140 ALR 615); *Curry* v. *United States,* 314 US 14 (62 S Ct 48, 86 L ed 9); *Penn Dairies, Inc.,* v. *Milk Control Commission,* 318 US 261 (63 S Ct 617, 87 L ed 748); *Esso Standard Oil Co.* v. *Evans,* 345 US 495 (73 S Ct 800, 97 L ed 1174). In each of those cases an independent contractor who was not an agent or instrumentality of the United States engaged in the performance of United States contracts. State taxes or regulations imposed on the contractors in connection with such performance were held valid despite the fact that the economic burden thereof was passed on by the contractors to the United States. Plaintiff, in disputing the applicability of those cases here, points out that in each the United States or its instrumentality was insulated from the direct impact of the State tax or regulation by the intervention of an independent contractor; that the tax or regulation burdened the government or its instrumentality only to the extent that it chose to assume that burden, by contract, from the contractor directly taxed or burdened; that in each the tax was collected from a contractor while here the retailer collects it from the plaintiff itself; that in those cases the question went to whether contractors performing government contracts were immune or exempt, but that here the question pertains to the nature and extent of the immunity and congressionally conferred exemption of plaintiff itself as an instrumentality of the United States. Plaintiff urges that the holdings in those cases mean simply that, inasmuch as the

contractors were not granted express exemptions by act of congress, the mere fact that the economic burden ultimately came to rest on the United States did not afford a sufficient basis for implying an immunity in the contractors. We think, however, that those cases are analogous in that the legal incidence fell on the contractors, because the tax was required to be collected from them as purchasers, and they passed its burden on to the United States and here, similarly, the legal incidence falls upon the retailer, he alone is required by law to pay the tax, and he passes on the burden to plaintiff. Here, as there, the burden on plaintiff is only such as it chooses to assume in doing business with retailers. The State collects no tax from plaintiff and the latter is required to pay no tax to the State. Whether the person upon whom the legal incidence of the State tax or regulation falls, and who passes along its economic burden to a Federal instrumentality, happens to be the purchasing independent contractor, as in the cited cases, or the selling retailer, as here, seems to us a distinction without a difference so far as legal significance is concerned. We think the cited cases are authority for the proposition that the passing on of the economic burden to a Federal instrumentality is not violative of the latter's constitutional immunity or statutory exemption when worded as here. Decision in *King & Boozer,* holding valid a State sales tax imposed on purchases by a contractor for use in performance of a United States contract, was definitely predicated on an express finding that, despite its economic burden on the United States, the legal incidence of the tax was not on the United States but on the contractor. That that was the controlling factor in that case was indicated in so many words in the majority opinion in *Kern-Limerick, Inc.,* v. *Scurlock,* 347 US 110 (74 S Ct 403, 98 L ed 313). Similarly, in *Esso,* in the course of dis-

tinguishing that case from *United States* v. *Allegheny County,* 322 US 174 (64 S Ct 908, 88 L ed 1209), the reasoning of the court seems to boil down to that same concept, that it is the legal incidence and not the economic burden of a State tax to which the immunity or statutory exemption of a Federal instrumentality extends and that exemption of the intermediate person upon whom the legal incidence of the tax falls is not to be implied, regardless of the fact that he passes its burden on to the United States, so long as congress has not expressly exempted such person therefrom.

We now consider reasoning, set forth by the writer of one of the briefs in a companion case, to the effect that *Dravo, King & Boozer,* and *Penn Dairies* are not controlling in the circumstances at bar because they involve only implied immunity and not, as in the case of plaintiff here, both such immunity and express statutory exemption. It is emphasized that the Federal cases make a distinction between those 2 situations and suggested that they hold, in substance, that implied immunity is to be narrowly construed and is a limited one attaching only to the attempted imposition of the legal incidence of a State tax or regulation on the United States or its instrumentalities, but that, on the other hand, as stated in *Dravo,* "Semble that congress has power to prevent interference with the operations of the Government through State taxation laid on receipts of those who render it services under contracts." (Syllabus 13), citing *Thomson* v. *Pacific Railroad Co.,* 9 Wall (76 US) 579 (19 L ed 792). With that proposition and asserted distinction the State has no quarrel whenever the act of congress clearly exempts the transaction in question in plain and unmistakable terms. The fact remains, however, that the person upon whom the tax is imposed here, namely, the retailer, is no more granted an express exemption by

act of congress than were the contractors upon whom a tax or regulation was imposed in *Dravo, King & Boozer,* and *Penn Dairies.* It may be said as appropriately here as it was in the opinion in *Dravo* that while it may well be competent for congress to enact legislation to effect the result here contended for by plaintiff, namely the exemption of the intermediate party upon whom the legal incidence of the tax falls, it has not done so. The act of congress grants plaintiff an express statutory exemption from certain State taxation but the State does not levy upon or collect a tax from plaintiff. The State sales tax statute operates on retailers in Michigan. They alone are obligated to pay the tax. The purchasers are under no such obligation except as they assume, by contract or purchase, to shoulder the economic burden. In *Esso* the Defense Supplies Corporation, wholly owned by the Reconstruction Finance Corporation, was specifically exempted by act of congress from the State storage and use tax there involved. Its aviation fuel was stored, for a consideration, in Esso's tanks by a contractual arrangement under which the United States government agreed to assume all of Esso's liability for State taxes in connection therewith. It was held that the Defense Supplies Corporation's express statutory exemption did not operate to exempt Esso from the State tax on that storage operation even though its economic burden was, by contract, passed on to the United States, the court saying: "There is no claim of a stated immunity. And we find none implied." That is to say, the express statutory exemption of Defense Supplies Corporation applies only to a State tax whose legal incidence falls upon that instrumentality, but does not constitute a stated immunity against what was involved in that case, namely, a State tax whose legal incidence falls upon a contractor who passes its economic burden, by con-

tract, to that Federal instrumentality. The reasoning in *Esso* impels to the conclusion that plaintiff's express statutory exemption does not serve to exempt Michigan retailers in relation to sales made to plaintiff for the reason that congress has not undertaken to so provide. The reading into the Federal reserve act of such an exemption with respect to the retailers would amount to an exemption by implication as certainly as it would in *Dravo, King & Boozer,* and *Penn Dairies,* were the involved State tax or regulation to be held inapplicable there.

Plaintiff discounts any distinction between *Bismarck* and the instant case, urging that the requirement of the North Dakota statute that the retailer collect the tax from the purchaser, thus imposing the legal incidence of the tax on the latter, is approximated by the provisions of section 23 of the Michigan act, which permits the retailer to add the tax to his sales price and prohibits him from holding out that it is not considered an element in the price to the consumer. It is suggested that, as a practical matter, the only difference between the 2 statutes is one of "nice language" but that the effect is the same and, in consequence, the decision in both should be the same. Language is, of course, the substance of which statutes, contracts and a myriad of legal relationships are made. We do not think the mentioned difference in statutory language so fine spun or negligible as to preclude a difference in results. It is manifest that "nice language," employed not in the applicable statutes but in the contracts involved, afforded the sole basis for the difference in results between *King & Boozer* and *Kern-Limerick.* In the latter a majority of the supreme court of the United States held that the immunity of the United States government from a State sales tax extended to purchases by a contractor used in the performance of a United States contract while in *King & Boozer*

the opposite was held. In both cases the legal inci-
dence of the tax under the governing State law fell on
the purchasing contractor and in both the latter
passed its economic burden on to the United States
government. While a dissenting minority in *Kern-
Limerick* held to the view that the majority opinion
therein overruled *King & Boozer,* the majority opin-
ion distinguished the 2 cases on the sole ground that
in *Kern-Limerick* the agreement between the United
States and the contractor made the latter a purchas-
ing agent of the government, while in *King & Boozer*
an almost comparable contract did not so provide.
In consequence, the majority in *Kern-Limerick* found
that the United States was, under the terms of the
contract with the contractor, the purchaser and for
that reason held that the tax could not be collected
under a statute which made the purchaser liable for
the tax, and in so concluding said (p 122) :

"Thus, *King & Boozer* is not controlling for,
though the government also bore the economic bur-
den of the State tax in that case, the legal incidence
of that tax was held to fall on the independent con-
tractor and not upon the United States."

That establishes the "legal incidence" of a tax as
the decisive factor. The difference between contrac-
tual provisions in *King & Boozer,* on the one hand,
and *Kern-Limerick,* on the other, is no more signifi-
cant or impelling to opposite results than is the dif-
ference between the provisions of the North Dakota
and the Michigan sales tax acts. The North Dakota
act imposes the legal incidence on the purchaser
while the Michigan act imposes it on the retailer, a
distinction which the Federal cases hold controlling.

Decree upholding the right of defendant to require
Michigan retailers to include in their gross proceeds
used for the computation of their annual sales tax
any proceeds derived from sales to plaintiff and to

collect such tax from them in accord therewith is hereby affirmed, with costs to defendant.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and KELLY, JJ., concurred.