20690. OXFORD, State Revenue Commissioner *v.*
J. D. JEWELL, INC.

ARGUED NOVEMBER 9, 1959—DECIDED JANUARY 8, 1960.

*Eugene Cook, Attorney-General, Ben F. Johnson, Jr., Robert H. Walling, John M. Bowling, Louis F. McDonald, John E. Dean, Deputy Assistant Attorneys-General,* for plaintiff in error.

*Wm. L. Norton, Jr., Wheeler, Robinson, Norton & Thompson, C. E. Gregory, Jr., Arnall, Golden & Gregory,* contra.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, Harry S. Baxter, Wm. W. Cowan, Harold M. Walker,* for party at interest not party to record.

*Charles K. Rice, Assistant Attorney-General (of U. S.), Lee A. Jackson, Myron C. Baum, Mark S. Charwat, Chas. D. Read, Jr., U. S. Attorney,* for party at interest not party to record.

MOBLEY, Justice. ■ It is conceded by the Commissioner that the State cannot constitutionally impose a vendee-type tax on sales made to the United States and that if, under the act, the tax imposed is upon the vendee, the judgment of the trial court

should be affirmed. He contends, however, that the tax is a vendor-type tax, that the act levies the tax upon the licensed retailer, that the legal incidence of the tax is upon the retailer, and that only the economic burden is upon the vendee or consumer. He further contends that the tax is not upon the retail sale, but is placed upon the retailer for the privilege and license of doing business, and that sales to the United States are not excluded from retail sales on which the retailer must pay the tax.

This court in *Williams* v. *Bear's Den, Inc.*, 214 *Ga.* 240 (104 S. E. 2d 230), a case in which the question presented was, "Where a retail dealer has collected the tax from his customers under the Sales Tax Act of 1951, is his duty or obligation to the State that of an agent, liable only for the use of ordinary care in the safe-guarding and remittance of such taxes or is he liable as a taxpayer? In other words is the tax levied, under the statute, upon the dealer or against the customer?" held, with Presiding Justice Wyatt dissenting: "From a review of the whole act, we are of the opinion that it was the intent and purpose of the legislature to levy the tax against the dealer. The levy of the tax is against him and the responsibility of collecting the tax on each sale from the purchaser and remitting to the Commissioner is solely upon him. If he fails to collect the tax from the purchaser he has to pay the tax. The act specifically declares the relationship between the dealer and purchaser as that of debtor and creditor. The dealer's relationship to the State is that of a taxpayer. The tax on sales is imposed upon the dealer with the duty of the dealer 'as far as practicable' to add the amount of the tax to the sales price and though the tax is ultimately borne by the purchaser its imposition and responsibility for payment is upon the dealer. . . For the reporting, accounting and payment of the tax the dealer is a taxpayer, with the right of the State in the case of his default to proceed against him, not as an ordinary agent, but as a taxpayer."

Counsel for the Commissioner in his brief refers to a "schizophrenic interpretation" of the act. A more accurate statement would be that the court is called upon to interpret an act with schizophrenic symptoms. The act has two faces—one, that of a vendor tax; the other, a vendee tax. However, we reaffirm

the conclusion reached in *Williams* v. *Bear's Den, Inc.*, 214 *Ga.* 240, supra, that, from a review of the act as a whole, the tax imposed by the Georgia Sales and Use Tax Act is on the retailer for the privilege and license of engaging in the retail business in this State.

Where, as here, the tax is levied upon the vendor, would he be required to pay sales taxes upon sales made to the United States? The retailer is required to pay the tax upon all retail sales except those excluded by the act. Retail sales are used solely as a measure of the retailer's liability. While the act requires the retailer, "as far as practicable," to collect the tax from the consumer, his failure or inability to collect does not relieve him from paying the tax. If all his sales were one-cent sales on which it would not be practicable to collect the tax, or if the United States were under the Federal Constitution exempt from payment of the tax, his liability would not be affected. Unless retail sales made by the retailer are exempt under provisions of the act, he must pay the tax on them. The nature of the sales is of no moment, except as the exclusion provisions of the act might affect them.

Accordingly, the question is, whether sales to the United States are excluded by the act from retail sales which shall be used in computing the tax liability of the retailer. "The exemption from taxation must be strictly construed, 'and the exemption will not be held to be conferred unless the terms under which it is granted clearly and distinctly show that such was the intention of the legislature.' *Mayor &c. of Macon* v. *Central Railroad & Banking Co.*, 50 *Ga.* 620 . . .' *Cherokee Brick &c. Co.* v. *Redwine*, 209 *Ga.* 691, 693 (75 S. E. 2d 550), and cases cited. The plaintiff urges that section 3 (c) 2 (d) of the act does exclude such sales. After defining in section 3 (c) 1 the terms "retail sale" or "sale at retail" within the meaning of the act, section 3 (c) 2 (d) provides that the terms "retail sale" and "sale at retail" shall not include the following: "Sales which a State would be without power to tax under the limitations of the Constitution of the State or the United States, together with sales to the State of Georgia, any county or municipality of said State." Section 2 of the act, imposing the tax upon the retailer for the

privilege or license of doing business, fixes the base or measure of tax liability at three percent of retail sales. Retail sales under a vendor-type tax serve to measure the amount of tax liability of the retailer. Under the act, the terms "retail sales" and "sales at retail" define the measure of the tax. Thus, section 3 (c) 2 (d) excludes sales which cannot constitutionally be used as a base or measure of the tax. Since the tax is upon the retailer and not upon the sale, a tax is not levied against the sale to the United States, which the State would be without authority to tax by reason of the Federal Constitution. See Esso Standard Oil Co. v. Evans, 345 U. S. 495 (73 S. Ct. 800, 97 L. Ed. 1174).

In Western Lithograph Co. v. State Board of Equalization, 11 Cal. 2d 156, 162 (78 P. 2d 731), the Supreme Court of California, in dealing with the same question that is before us — that is, whether a sales tax was due by the vendor under a vendor-type tax on sales made to an instrumentality of the United States, where the statute excluded from the tax "the gross receipts from sales of tangible personal property which this State is prohibited from taxing under the Constitution or laws of the United States of America or under the Constitution of this State" —held that there was no exclusion under this provision, for the reason that a sales tax imposed by a State upon a retailer for the privilege of selling goods at retail and measured by the seller's gross receipts is not a tax on the purchaser and is, therefore, not a State tax on a Federal instrumentality. Sales made to the United States by the defendant are not excluded by section 3 (c) 2 (d) or by any other provision of the act from those retail sales upon which he must pay the sales tax.

The plaintiff, in its brief, and others similarly situated in amici curiae briefs, argue very strenuously that to construe the act as imposing a vendor's tax, which does not exclude sales to the United States, will place Georgia retailers at an economic disadvantage in making sales to the United States. However true this may be, we are mindful of the fact that the Constitution of Georgia vests in the General Assembly the power to make the law and limits the authority of this court to its interpretation.

Our responsibility, and the only authority this court has, is to

interpret the law as it was written by the General Assembly. The wisdom of legislation rests in the General Assembly. If, in the exercise of their discretion, the members of the General Assembly feel that a sales tax on the vendor is unwise, that it works an economic hardship on Georgia retailers from which they should be relieved, they have full authority to correct the situation by amendment. We possess no such power. We have no sympathy with courts usurping powers of other branches of government, and we zealously try to refrain from doing so ourselves.

If the General Assembly had intended to exempt sales to the United States from payment of the tax, it would only have had to add to section 3 (c) 2 (d) the three words "the United States." The fact that the General Assembly did not follow this simple procedure but, instead, used the words "sales which a State would be without power to tax under the limitations of the Constitution of the State or of the United States . . ," indicates clearly that it did not wish to exempt sales to the United States unless required to do so by either the Federal or the State Constitution. The General Assembly obviously wanted to collect from the retailer on such sales if it could. The Georgia Sales and Use Tax is noted for the fact that it is all-inclusive, covering everything from the cradle to the grave. Exemptions are the rare exception.

■ The plaintiff alleges that the Georgia Retailers' and Consumers' Sales and Use Tax Act of 1951, in levying and imposing a tax upon the plaintiff measured by the sales price of poultry sold to the United States government, is unconstitutional and void, in that it imposes a direct burden and imposition upon and interference with activities and property of the United States government in violation of article 6, clause 2, of the Constitution of the United States (Code § 1-602), and in violation of the doctrine of Federal immunity from State taxation.

The constitutional immunity of the United States from State and local taxation was first established in the case of McCulloch v. Maryland, 4 Wheat. 316 (17 U. S. 316, 4 L. Ed. 579), and has been repeatedly reaffirmed in the decisions of the Supreme Court of the United States. Van Brocklin v. State of Tennessee,

117 U. S. 151 (6 S. Ct. 670, 29 L. Ed. 845); Federal Land Bank of St. Paul *v.* Bismarck Lumber Co., 314 U. S. 95 (62 S. Ct. 1, 86 L. Ed. 65); United States *v.* Allegheny County, 322 U. S. 174 (64 S. Ct. 908, 88 L. Ed. 1209); Kern-Limerick, Inc. *v.* Scurlock, 347 U. S. 110 (74 S. Ct. 403, 98 L. Ed. 546); United States *v.* City of Detroit, 355 U. S. 466, 469 (78 S. Ct. 474, 2 L. Ed. 2d 424). The Commissioner concedes the immunity of the United States from taxation by the State. Admittedly, if the act levies the tax upon sales to the United States it is unconstitutional. Where, however, as here, the act levies the tax upon the retailer for the privilege and license of doing business, and retail sales are used only for the purpose of computing his tax liability, there is no tax levied upon the retail sale to the United States and the act does not violate the immunity of the United States from State taxation, provided by the Federal Constitution. Esso Standard Oil Co. *v.* Evans, 345 U. S. 495, supra.

The Supreme Court of Michigan, in a well-reasoned opinion in the case of Federal Reserve Bank of Chicago *v.* Department of Revenue, 339 Mich. 587 (64 N. W. 2d 639, 644), in discussing controlling United States Supreme Court decisions of James *v.* Dravo Contracting Co., 302 U. S. 134 (58 S. Ct. 208, 82 L. Ed. 155, 114 A. L. R. 318); State of Alabama *v.* King & Boozer, 314 U. S. 1 (62 S. Ct. 43, 86 L. Ed. 3, 140 A. L. R. 615); Curry *v.* United States, 314 U. S. 14 (62 S. Ct. 48, 86 L. Ed. 9); Penn Dairies *v.* Milk Control Commission, 318 U. S. 261 (63 S. Ct. 617, 87 L. Ed. 748); Esso Standard Oil Co. *v.* Evans, 345 U. S. 495, supra, in each of which cases a tax was imposed upon a contractor who was not an agent or instrumentality of the United States, but who was engaged in the performance of United States contracts, and in each of which cases the United States Supreme Court held that the tax was not upon the United States although the economic burden ultimately came to rest on the United States, had this to say:

"We think, however, that those cases are analogous in that the legal incidence fell on the contractors, because the tax was required to be collected from them as purchasers, and they passed its burden on to the United States and here, similarly, the legal incidence falls upon the retailer, he alone is required to pay the

tax, and he passes on the burden to plaintiff. Here, as there, the burden on plaintiff is only such as it chooses to assume in doing business with retailers. The State collects no tax from plaintiff and the latter is required to pay no tax to the State. Whether the person upon whom the legal incidence of the State tax or regulation falls, and who passes along its economic burden to a federal instrumentality, happens to be the purchasing independent contractor, as in the cited cases, or the selling retailer, as here, seems to us a distinction without a difference so far as legal significance is concerned. We think the cited cases are authority for the proposition that the passing on of the economic burden to a federal instrumentality is not violative of the latter's constitutional immunity or statutory exemption when worded as here. Decision in King & Boozer, holding valid a State sales tax imposed on purchases by a contractor for use in performance of a United States contract, was definitely predicated on an express finding that, despite its economic burden on the United States, the legal incidence of the tax was not on the United States but on the contractor. That that was the controlling factor in that case was indicated in so many words in the majority opinion in Kern-Limerick, Inc. *v.* Scurlock, 347 U. S. 110 (74 S. Ct. 403, 98 L. Ed. 546). Similarly, in Esso, in the course of distinguishing that case from U. S. *v.* Allegheny County, 322 U. S. 174 (64 S. Ct. 908, 88 L. Ed. 1209), the reasoning of the court seems to boil down to that same concept, that it is the legal incidence and not the economic burden of a State tax to which the immunity or statutory exemption of a federal instrumentality extends and that exemption of the intermediate person upon whom the legal incidence of the tax falls is not to be implied, regardless of the fact that he passes its burden on to the United States, so long as Congress has not expressly exempted such person therefrom."

The reasoning and conclusion of the Supreme Court of Michigan is applicable here. There is no merit in the contention that the act violates article 6, clause 2, of the United States Constitution and the immunity of the United States from State taxation.

■ The plaintiff contends that the act, when construed as a

vendor-type tax, violates the equal-protection clause of the Fourteenth Amendment to the Constitution of the United States (Code § 1-815) and article I, section I, paragraph III, of the State Constitution (Code § 2-103), providing that "No person shall be deprived of life, liberty, or property, except by due process of law," because it would discriminate against him as a vendor to the Federal government, since he cannot collect the tax from the United States because of its immunity, while permitting and requiring other retailers to collect the tax from the consumer. This contention is without merit for two reasons.

First, there is no showing that the defendant cannot collect the tax on sales made to the United States. In fact, the Comptroller General of the United States, who determines what the United States can and cannot pay, in a number of decisions has held, on authority of Esso Standard Oil Co. v. Evans, 345 U. S. 495, supra, that the Federal government can pay as a part of the purchase price sales taxes imposed on the vendor by the states. 21 Comptroller General's Decisions 843; 33 Comptroller General's Decisions 453; unpublished opinion number B-128720, August 6, 1956, on the South Carolina Sales Tax Act.

Second, if the plaintiff cannot add on the tax on sales to the Federal government, it is not because of the Sales Tax Act. If there is any discrimination, it results from the Federal Constitution. The act gives all vendors the right to collect the tax on all sales, and because some superior authority exempts sales to the Federal government, this would not evidence any discrimination on the part of the State. See *Richardson* v. *Citizens Trust Co.*, 176 *Ga.* 553, 557 (168 S. E. 306). The act does not violate the Fourteenth Amendment to the Constitution of the United States or article I, section I, paragraph III, of the Constitution of Georgia.

*Judgment reversed. All the Justices concur, except Wyatt, P. J., and Candler, J., who dissent.*

CANDLER, Justice, dissenting. For the privilege or license to engage in the business of selling tangible personal property at retail in this State, our Sales Tax Act of 1951 (Ga. L. 1951, p. 360) imposes on every such dealer the duty to collect from the purchaser or consumer a tax equal to three percent (3%) of the sales

price or charge for each such article at the time of sale and to remit such tax monthly to the State Revenue Commissioner. If he fails, neglects, or refuses to collect the tax from the purchaser or consumer, he is personally liable for it and also commits a misdemeanor and is subject to the punishment prescribed by the act on his conviction of that offense. However, section 3 of the act expressly exempts from its operation several enumerated items of tangible personal property, on which a retail dealer is not required or authorized to collect a tax on their sale at retail, and this section of the act further provides that the terms "retail sale" and "Sale at retail" shall also not include the following: ". . . (d) Sales which a State would be without power to tax under the limitations of the Constitution of the State or the United States, together with sales to the State of Georgia, any county or municipality of said State." It is conceded in the brief for the Revenue Commissioner and well settled by numerous decisions of the Supreme Court of the United States, beginning with McCulloch v. Maryland, 4 Wheat. 316, 376, which was delivered for the court by Chief Justice Marshall in 1819, that the State of Georgia is without power to tax the United States, and it is very clear to me that the tax-exempting words in section 3 (d) of our Sales Tax Act, namely, "Sales which a State would be without power to tax under the limitations of the Constitution of the State or the United States," are the exact equivalent of saying that sales which a Georgia retail dealer in tangible personal property makes to the United States are exempt from the tax imposed by the act. Section 12 (b) of the act provides: "Dealers shall, as far as practicable, add the amounts of the tax imposed under this act to the sales price or charge, which shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law in the same manner as other debts." But the add-on provision of this section does not have the legal effect of changing the character of the added tax and thus making it a component part of the retail selling price or charge for the article, though added to the price or charge it is nonetheless a tax on the article; and this is true since a State cannot accomplish by indirection that which it is prohibited from accomplishing directly. United States v. Allegheny

County, 322 U. S. 174, 189 (64 S. Ct. 908, 88 L. Ed. 1209). As previously pointed out, it is not only the legal duty of a Georgia retail dealer in tangible personal property to collect the tax imposed by the act upon *any*, *every*, and *all* retail sales made by him, except those sales which the act exempts from the tax, and he commits a penal offense if he fails or refuses to do so. In Kern-Limerick, Inc. *v*. Scurlock, 347 U. S. 110 (74 S. Ct. 403, 98 L. Ed. 546), the Supreme Court of the United States clearly held that a tax imposed upon a vendor who, in turn, is required to collect the tax from the purchaser is a tax upon the purchaser and the imposition of such a tax in a transaction where the purchase was actually made for the United States is one which a State is without power to impose and collect. That case involved a construction of Arkansas' Gross Receipts Tax Law of 1941, which requires the seller of tangible personal property to collect the tax imposed by the act from the purchaser and remit it to the State's Tax Commissioner, and the act makes the seller a taxpayer of the State with respect to the proceeds derived from his sales. The facts involved in that case were briefly these: Certain private contractors agreed to construct a naval ammunition depot in that State for the United States under a "cost-plus-a fixed-fee contract." They purchased two Diesel tractors from Kern-Limerick, Inc., a local dealer, for use in the construction of such depot. The Supreme Court of Arkansas held that the seller was liable for the tax which that State's act imposed. The case was reversed by the Supreme Court of the United States, and it is said in the reversing opinion: "The circumstances of the transaction would concededly make Kern-Limerick liable for the tax if the real purchaser were not the United States." The opinion by the majority in this case frankly states that Georgia's sales tax act has two faces. One, that of a vendor tax; the other a vendee tax. Being such, the rule unanimously announced by this court in *State of Georgia* v. *Camp*, 189 *Ga.* 209 (6 S. E. 2d 299), and the several cases there cited, that ambiguous tax statutes should be given that construction most favorable to the citizen or taxpayer, should be here applied. And section 12 (a) of the act emphatically declares that the tax shall be collected by the dealer from the purchaser

or consumer and that, notwithstanding any other provision of the act, it is the purpose and intent of the act to levy a tax on the purchaser or consumer of the tangible personal property which he purchases from a retail dealer and for the service which such a dealer is required to render the State in collecting the tax imposed by the act from the purchaser or consumer—the one ultimately liable for its payment, section 16 (b) of the act provides for compensating or paying him for such service. Connecticut's sales tax act is very similar in its provisions to our act and on March 25, 1958, the Supreme Court of Errors of that State in the case of Avco Mfg. Corp. *v.* Connelly, 145 Conn. 161 (140 A. 2d 479), held that a retail sale of tangible personal property to the United States was not taxable under its act for want of the State's power to do so and cited Kern-Limerick, Inc. *v.* Scurlock, 347 U. S. 110, supra, in support of its ruling. That case involved precisely the same question as is involved here, namely, the applicability of a sales tax imposed upon a retail dealer, who, in turn is required to collect the tax from the purchaser, and it was there said by the court: "The defendant emphasizes the fact that the sales tax is levied on retailers for the privilege of selling tangible personal property at retail and, although § 2092 (2) provides that the retailer shall, in turn, collect the full amount of the tax from the consumer, refuses to concede that it is, in effect, a tax on the purchaser or consumer." In *Williams* v. *Bear's Den, Inc.*, 214 *Ga.* 240 (104 S. E. 2d 230), I agreed to the decision which the majority rendered; but there the retail dealer could legally and actually did collect the sales tax from its purchasers which the Revenue Commissioner sought to recover from it, and the dealer's sole defense was that the tax it had collected had been stolen from it. That decision should, I think, be interpreted as holding, that, under the provisions of Georgia's Sales Tax Act, a retail dealer is a taxpayer only with respect to the amount of tax collected by him from retail sales of tangible personal property to those who are, under the act, required to pay a sales tax, and that it is his legal duty to pay to the Revenue Commissioner the amount so collected by him; and having such a status, in consequence of the privilege or license the State grants to him to engage in the business of selling

tangible personal property at retail, he is not relieved of his legal liability to account for and pay to the Revenue Commissioner the amount of tax so collected by him, even if it were lost without fault on his part before he remits it to the Revenue Commissioner. This case differs on its facts from the *Bear's Den* case in that here the retail dealer could not and did not collect any tax on its sales to the United States, but paid to the Revenue Commissioner the amount which would have been due under the act except for the government's sovereign immunity from taxation and sued for a refund of it, and I think the trial judge properly held that he was entitled to prevail. A ruling different from the one made by the trial judge in the case at bar would preclude a Georgia retail dealer in tangible personal property from selling his products to the United States, since he cannot collect a sales tax from the United States because of its sovereign immunity from taxation and because he commits a penal offense under our Sales Tax Act if he sells his products to anyone without collecting the tax imposed by the act, except to those purchasers or consumers who are not required by the act to pay a sales tax to a retail dealer from whom they buy.