# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions

HEOS v CITY OF EAST LANSING

Docket No. 165763. Argued on application for leave to appeal October 10, 2024. Decided February 3, 2025.

James Heos, individually and on behalf of all others similarly situated (plaintiff), filed an action in the Ingham Circuit Court against the city of East Lansing (the City), asserting that a franchise fee passed onto plaintiff by the Lansing Board of Water and Light (LBWL) violated Article 9, § 31 of Michigan's 1963 Constitution (the "Headlee Amendment") because it constituted a new local tax by the City; violated MCL 141.91; violated the Equal Protection Clause of Michigan's Constitution, Const 1963, art 1, § 2; and violated the Foote Act, 1905 PA 264. The City is provided electrical services by two utility companies—Consumers Energy and the LBWL—and the companies are authorized to provide those services through franchise agreements with the City. In 2016, the City was informed of budget shortfalls in its retirement system, and the City manager indicated that the City could solve this problem in part by imposing franchise fees on the LBWL. To that end, and despite expressed concerns by LBWL staff that passing such a franchise fee on to LBWL consumers could violate the Headlee Amendment, the City negotiated a new franchise agreement with the LBWL in 2016 that was finalized in 2017. In relevant part, the franchise agreement required the following: the LBWL would collect the franchise fees—which were calculated at a rate of 5% of the revenue collected from the sale of energy—from its consumers and remit those fees to the City, but if the LBWL was precluded from collecting the fees, remittance to the City would cease; the franchise fee would appear on the consumers' corresponding energy bills; the City would at all times keep and save the LBWL harmless from all loss associated with collecting and remitting the franchise fee to the City; and the LBWL would receive a 0.5% administrative fee from the City in exchange for collecting the fee. The 5% franchise fee was to be paid by the LBWL to the City for the use of the City's streets, public places, and other facilities. However, the fee did not correspond with any costs the City incurred as a result of the LBWL's provision of electrical services; rather, its amount was chosen to align with similar rates charged in other communities. Ultimately, the East Lansing City Council approved and enacted by ordinance the franchise agreement between the City and the LBWL, although the ordinance was never approved by a majority of the City's voters. The LBWL thereafter remitted the franchise fees to the City in accordance with the agreement at a rate of about $1.4 million per year, which the City then placed in the City's general fund, thus allowing the City to use the funds for any purpose. Plaintiff moved for partial summary disposition of its claims related to the Headlee Amendment, arguing that the franchise fee was an unlawful tax that the City had imposed

on its residents in violation of the Headlee Amendment and MCL 141.91. In turn, the City moved for summary disposition of all plaintiff's claims, arguing in relevant part that plaintiff was not a "taxpayer" and that his Headlee Amendment claims were therefore barred by the one-year period of limitations set forth in MCL 600.308a(3). The court, Wanda M. Stokes, J., granted plaintiff's motion for partial summary disposition, holding that plaintiff was a "taxpayer" because he was responsible for paying the franchise fee and that the franchise fee violated the Headlee Amendment because it constituted a tax that had not been approved by a majority of the voters. In a separate opinion, the trial court denied the City's motion with regard to all claims except for the equal-protection claim. Both parties appealed, and the Court of Appeals consolidated the cases. In an unpublished per curiam opinion issued on April 13, 2023 (Docket Nos. 361105 and 361138), the Court of Appeals, GLEICHER, C.J., and O'BRIEN and MALDONADO, JJ., reversed the trial court and remanded the case for entry of an order granting the City's motion for summary disposition on all counts. The Court of Appeals determined that its decision in *Morgan v Grand Rapids*, 267 Mich App 513 (2005), was controlling and that, regardless of whether the fee was a tax, plaintiff was not a taxpayer (but instead, a member of the public), and, therefore, plaintiff's claim was time-barred by the Headlee Amendment's one-year limitations period, MCL 600.308a(3). Plaintiff sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant plaintiff's application for leave to appeal or take other action. 513 Mich ___; 4 NW3d 744 (2024).

In an opinion by Justice ZAHRA, joined by Justices CAVANAGH, WELCH, and BOLDEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

The Headlee Amendment prohibits local governments from levying new taxes or increasing existing taxes above specified rates without the approval of a majority of the qualified electors of that unit of local government voting thereon. A municipality may not circumvent the Headlee Amendment by enlisting a cooperative nongovernmental entity to accept the imposition of a franchise fee with the express understanding that the entity would, in turn, be required to collect the franchise fee from would-be taxpayers and remit the revenue collected to the municipality. Such an arrangement violates the Headlee Amendment because the purported "fee" operates as a tax that has not been approved by the voters of the municipality. The franchise fee here functioned as a tax because the fee was imposed for a general revenue-raising purpose, the fee was not proportionate to any costs incurred by the City for the LBWL's provision of electrical services, and the fee was not voluntary. Plaintiff was a taxpayer with respect to the fee because the LBWL's consumers who reside in the City bore the legal incidence of the challenged fee, the LBWL had no legal obligation to pay the franchise fee itself, the LBWL merely collected and remitted the fee from City residents to the City, and the LBWL acted as a conduit for the City by placing the challenged fee on the consumers' bills. The franchise fee therefore violated the Headlee Amendment, and plaintiff had a viable Headlee Amendment claim to recover fees that were assessed and due within one year of filing this lawsuit. The Court of Appeals' conclusion that plaintiff was not a taxpayer was reversed, and the case was remanded to the trial court for further proceedings. The Supreme Court denied plaintiff's application for leave to appeal in all other respects.

1. In essence, the Headlee Amendment prohibits local governments from levying new taxes or increasing existing taxes above specified rates without the approval of a majority of the

qualified electors of that unit of local government voting thereon. Although the levying of a new tax without voter approval violates the Headlee Amendment, a charge that constitutes a user fee does not. Generally, a "fee" is exchanged for a service rendered or a benefit conferred, whereas a tax is designed to raise revenue. To determine whether a charge is a user fee or a tax, courts must consider the following factors: (1) a valid user fee must have a regulatory purpose and not a general revenue-raising purpose, (2) a valid user fee must be proportionate to the required cost of the service, and (3) a valid user fee must be voluntary. These factors are not considered in isolation, and no single factor is generally dispositive. In this case, the franchise fee was clearly used for a general revenue-raising purpose. Further, the revenue collected did not correspond with any consumer-specific benefits provided by the City in relation to the LBWL's supply of electrical services, and the City provided no benefits specific to plaintiff in exchange for payment of the franchise fee. The franchise fee was also not proportional to the costs the City incurred for granting the LBWL the right to provide electrical services to plaintiff, and the City therefore failed to differentiate any particularized benefits to the LBWL's consumers from the general benefits conferred on the public. Finally, the franchise fee was not voluntary given that (1) if consumers did not pay the fee, their electricity could have been shut off and (2) plaintiff could not have contracted for electricity from another utility. In light of these considerations, the franchise fee at issue was a tax. And because the City's electors never had the opportunity to adopt the ordinance approving the franchise fee by a majority vote, the fee violated the Headlee Amendment.

2. Taxpayers may bring a Headlee Amendment claim to seek a refund of a new tax not approved by a majority of electors within one year after the wrongfully imposed tax is due. If, however, a plaintiff sues only on behalf of the public, the cause of action accrues at the time the resolution was passed—here, in 2017 when the ordinance was passed—and, under MCL 600.308a(3), the suit may only be brought within one year of when the fee is enacted. Stated differently, if a plaintiff is a taxpayer, they may bring a Headlee Amendment claim to recover tax payments within one year after the wrongfully imposed tax is due. However, if a plaintiff is a member of the public, they cannot recover any tax payments that others may have made, and the Headlee Amendment's one-year limitations period runs from the date the ordinance authorizing the wrongful tax was enacted. *Morgan*—in which a cable subscriber brought an action against Grand Rapids to challenge a franchise fee that the city levied on a cable company and the company passed along to its customers—did not control the outcome of this case because it was factually and legally distinguishable, in particular because the city in *Morgan* was expressly authorized to charge the franchise fee to the utility by the federal Cable Communications Policy Act, and the utility, Comcast, chose to pass the fee on to its customers. However, *Morgan*'s analysis provided helpful considerations in determining whether a party is a taxpayer when a pass-through charge is imposed by a local government and collected by a nongovernmental entity (such as a utility). Specifically, courts should consider the following: (1) whether the charge obligation falls primarily on the consumer or utility (i.e., whether the consumer or the utility bears the legal incidence of the charge), (2) whether the local government has any recourse against the consumer for failing to pay the franchise fee, (3) whether the consumer has a contract with the utility or local government, (4) whether the consumer pays the challenged charge to the utility or local government, and (5) whether the local government or utility places the challenged charge on the consumer's bill. These considerations are relevant to determining which party is the taxpayer because they examine who is legally responsible to pay the tax as well as the circumstances concerning the payment of the tax. Under this framework, plaintiff was clearly a taxpayer of the franchise fee. The LBWL's

consumers who reside in the City bore the legal incidence of the challenged fee; the LBWL had no legal obligation to pay the franchise fee itself; the LBWL merely collected and remitted the fee from City residents to the City; and the LBWL was merely a conduit for the City because it placed the challenged fee on the consumers' bills, and then collected and remitted the fees to the City. The franchise fee therefore violated the Headlee Amendment, and plaintiff had a viable Headlee Amendment claim to recover fees that were assessed and due within one year of filing this lawsuit. The Court of Appeals' holding that plaintiff was not a taxpayer was reversed, and the case was remanded to the trial court for further proceedings.

Justice BERNSTEIN, concurring in part and dissenting in part, agreed with the majority's conclusion that the franchise fee was a tax but disagreed with its conclusion that plaintiff was a taxpayer. The party bearing the legal incidence of a tax—i.e., the taxpayer—is the party who is required by law to pay the tax. The Court of Appeals correctly relied on *Morgan* in concluding that plaintiff did not bear the legal incidence of the franchise fee; instead, the LBWL was the taxpayer because it bore the legal incidence. The facts in this case mirrored those in *Morgan*, and the same analysis should have applied to this case. Justice BERNSTEIN would have concluded that, as in *Morgan*, when a utility is legally responsible for paying a defendant municipality, the legal incidence of the fees falls primarily on the utility, not the consumer, because the utility is the entity that is *required by law* to pay the fee. The LBWL was legally responsible to pay the City under the franchise agreement and the ordinance as a condition of the City granting the LBWL a franchise. For that reason, the tax obligation fell primarily on the LBWL because it, not plaintiff was legally required to remit the fee to the City; plaintiff was not a taxpayer simply because the economic burden fell on him. Because the LBWL was the taxpayer, plaintiff was a member of the public and was required to bring his lawsuit within one year after the franchise fee was authorized, which he failed to do. The majority's attempts to distinguish *Morgan*, rather than confront the validity of the holding in *Morgan*, were without merit. Under the terms of the agreement, the LBWL had a legal responsibility to pay the franchise fee or face any remedy available to the City, including filing a breach-of-contract claim or revoking the franchise agreement. Further, the *Morgan* Court did not rely on the Cable Communications Policy Act when concluding that it was the cable provider that paid the fee and not the customer. Indeed, the fact that the Cable Communications Policy Act authorized the fee did not change the analysis regarding whether the *plaintiff* was a *taxpayer*. For these reasons, the majority's attempts to distinguish *Morgan* were unsuccessful. The majority's treatment of *Morgan* was even more confusing because, after distinguishing *Morgan*, the majority applied that Court's analytical framework in reaching its conclusion in this case. Justice BERNSTEIN would have held that because plaintiff was not a taxpayer, his claims were time-barred under MCL 600.308a(3), and on that basis, he would have affirmed the Court of Appeals' holding granting summary disposition in favor of the City.

Chief Justice CLEMENT did not participate because of a potential interest in the controversy.

Justice THOMAS did not participate because the Court considered this case before she assumed office.

# OPINION

Chief Justice:
  Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

FILED  February 3, 2025

STATE OF MICHIGAN

SUPREME COURT

JAMES HEOS, Individually and on Behalf
of All Others Similarly Situated,

      Plaintiff-Appellant,

v                                      No. 165763

CITY OF EAST LANSING,

      Defendant-Appellee.

---

BEFORE THE ENTIRE BENCH (except CLEMENT, C.J., and THOMAS, J.)

ZAHRA, J.

Defendant, the City of East Lansing (the City), extended offers to two utilities to maintain and add consumers if the utility agreed to collect a "franchise fee" from their consumers and remit the fee to the City. This case arises from the one utility's agreement to do so. Specifically, in 2016, the City and Lansing Board of Water and Light (LBWL) entered into an agreement that included a franchise fee to be charged to LBWL consumers

who resided within the City. The agreement required LBWL to remit to the City the franchise fees collected under the agreement. The franchise agreement included the following relevant provisions: LBWL would only "collect and remit to the City" the fee; the fee would "appear on the corresponding energy bills"; the City would "at all times keep and save the Grantee [LBWL] harmless from and against all loss . . . associated with the collection and remittance of [the] franchise fee"; and LBWL would receive a 0.5% administrative fee from the City for collecting the franchise fee.

Plaintiff James Heos and the class (plaintiff), who are all consumers of LBWL, brought a six-count complaint against the City alleging, among other things, that the franchise fee was a new local tax that violates Article 9, § 31 of Michigan's 1963 Constitution (the "Headlee Amendment") and MCL 141.91. The trial court granted summary disposition in favor of plaintiff pursuant to MCR 2.116(C)(10) on all counts except as to plaintiff's equal-protection claim. The Court of Appeals reversed and directed the trial court to enter an order granting summary disposition pursuant to MCR 2.116(C)(7) on all counts in favor of the City.[1] Plaintiff sought leave to appeal in this Court, and we ordered oral argument on the application.[2]

For reasons explained fully in this opinion, there is no question that the fee would be an illegal tax if the City imposed the charge directly on its residents. The issue therefore is whether a municipality may circumvent the Headlee Amendment by enlisting a cooperative nongovernmental entity to accept the imposition of a franchise fee with the

---

[1] *Heos v East Lansing*, unpublished per curiam opinion of the Court of Appeals, issued April 13, 2023 (Docket Nos. 361105 and 361138).

[2] *Heos v East Lansing*, 513 Mich ___; 4 NW3d 744 (2024).

express understanding that the entity would, in turn, collect the franchise fee from would-be taxpayers and remit the revenue collected to the municipality. We hold that such an arrangement violates the Headlee Amendment because the purported "fee" operates as a tax that has not been approved by the voters of the municipality.

Specifically, we conclude that the franchise fee functions as a tax because the fee was imposed for a general revenue-raising purpose, the fee was not proportionate to any costs the City incurred in LBWL providing electrical services, and the fee was not voluntary.[3] We further hold that plaintiff is a taxpayer of that tax: The consumers of LBWL electrical service who reside in the City bear the legal incidence of the challenged fee; LBWL has no legal obligation to pay the franchise fee itself; LBWL merely "collects and remits" the fee from City residents to the City; and LBWL places the challenged fee on the consumers' bills, acting as a conduit for the City.[4]

We conclude that the franchise fee is an unauthorized tax in violation of the Headlee Amendment of the Michigan Constitution. We reverse the judgment of the Court of Appeals as to whether plaintiff is a taxpayer and remand this case to the trial court for further proceedings. Because the franchise fee is an unlawful tax and plaintiff is a taxpayer, plaintiff has a viable Headlee claim to recover fees that were assessed and due within one

---

[3] See *Bolt v Lansing*, 459 Mich 152, 161-167; 587 NW2d 264 (1998).

[4] This Court has previously held that when a plaintiff is a taxpayer, instead of a mere member of the public, plaintiff may bring a Headlee Amendment claim within one year after the cause of action accrued (i.e., when the wrongfully imposed tax is due). *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 123-124; 537 NW2d 596 (1995) (*TACT*).

year of filing this lawsuit. In all other respects, we deny plaintiff's application for leave to appeal.

## I. FACTS AND PROCEDURAL HISTORY

The City is serviced by two electric utility providers—LBWL and Consumers Energy. LBWL services about 89% of the City's total rights-of-way, while Consumers Energy services the rest. In 2016, the City was alerted to a budgeting issue involving the City's underfunding of its pension and other-postemployment-benefits (OPEB) obligations. Because of this growing concern, the City's Manager, George Lahanas, proposed a way to increase revenue for the City's pension and OPEB obligations. In a 2016 e-mail, Lahanas stated that there "is the prospect for substantial increases to revenue [for the City's obligations] from several fronts, including [LBWL] franchise fees . . . ." Once the City enacted revenue solutions, Lahanas stated that the "[LBWL] franchise fees" were "part of a solution to better match revenues with expenditures over the long-term."

The City and LBWL began negotiating a new franchise agreement in 2016. During negotiations, LBWL staff expressed concern with provisions of the franchise agreement. Notably, LBWL staff questioned the franchise fee pass-through provision and its Headlee Amendment implications for the City. During a November 2016 meeting of the LBWL Board of Commissioners, LBWL "General Manager [Richard] Peffley stated that there is a concern that this fee could be illegal and that the [LBWL] has been put on notice. Should the Board choose to go forward with the Franchise Fee the [LBWL] would only be the collection agency for the City of E. Lansing." To avoid exposure to liability, it was recommended to the Board that "[LBWL] will need an agreement with East Lansing to

4

reimburse the [LBWL] for all costs for defending against a third-party claim associated with the franchise fee."

In June 2017, the City and LBWL finalized their new franchise agreement, which included the franchise fee at issue. Consumers Energy, the other electric utility provider in the City, refused to collect the franchise fee on behalf of the City and was nonetheless permitted to service areas of the City. The franchise agreement between LBWL and the City was approved and enacted by the East Lansing City Council through Ordinance No. 1411 on June 6, 2017 (the Ordinance). This Ordinance was not approved by a majority of the City's voters and remains unapproved today.[5]

The franchise agreement requires LBWL, "as Grantee," to, among other things, "collect" the franchise fees from its consumers and then "remit" those fees to the City. The franchise agreement includes the following relevant provisions:

SECTION 2. <u>FRANCHISE FEE</u>.

During the term of this franchise, or the operation of the electric system pursuant to this franchise, and to the extent allowable as a matter of law, the Grantee shall, upon acceptance of the City, *collect and remit* to the City a franchise fee in an amount of five percent (5%) of the revenue, excluding sales tax from the retail sale of electric energy by the Grantee within the City, for the use of its streets, public places and other facilities, as well as the maintenance, improvements and supervision thereof. *Such fee will appear on the corresponding energy bills.*

---

[5] The voters of the City have the right to approve this Ordinance because, as discussed later in this opinion, the franchise fee is a new tax on the City's LBWL consumers. The Headlee Amendment is a constitutional limitation on taxation, prohibiting units of local government "from levying any tax not authorized by law or charter when [the Headlee Amendment was] ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when [the Headlee Amendment was] ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon." Const 1963, art 9, § 31.

* * *

Either party, upon sixty (60) days written notice by the party may terminate this Ordinance granted franchise, franchise fee collection and remittance. *However, to the extent the Grantee is precluded from collecting such franchise fees*[,] *remittance to City will cease.*

* * *

SECTION 5. <u>HOLD HARMLESS.</u> . . . *Grantor shall indemnify, hold harmless and defend the Grantee* from any and all claims, losses or litigation which result from the Grantee's compliance with this Ordinance.

* * *

SECTION 7. <u>NONEXCLUSIVE FRANCHISE.</u> . . .
The exclusive right [of LBWL] to service certain areas of the City of East Lansing as described in Exhibit A is a condition concurrent to the collection and remittance of the Franchise Fee described in Section 2.

* * *

SECTION 14. PUBLICATION AND ADMINISTRATIVE COSTS. . . . A [LBWL] *administrative charge of $^1/_2$ percent (0.5%) of collected franchise fees* for the quarterly billing will apply. [Emphasis added.]

Since 2017, LBWL has remitted this franchise fee to the City at a rate of about $1.4 million per year. This franchise fee does not correspond with any costs the City incurs as a result of LBWL's provision of electrical services. The City has admitted that the 5% franchise fee was chosen on the basis of similar rates charged in other communities. Additionally, the City has admitted that the revenue from the franchise fees is placed into the City's general fund and may be used for any purpose the City deems appropriate, such as making payments to the City's pension and OPEB funds. Accordingly, the City's finance director, Jill Feldpausch, publicly stated in 2020 that the City has diversified its revenue sources, including " 'the franchise fees,' " which has "allowed [the City] to make supplemental pension payments[.]"

6

In April 2020, plaintiff filed a six-count class-action complaint. Count I alleged that the franchise fee is an illegal tax that violates the Headlee Amendment, which requires taxes imposed by the City to be approved by a majority of the City's voters. Counts II and III alleged that the franchise fee violates MCL 141.91, which prohibits the collection of taxes not authorized by law. Count IV alleged that the franchise fee violates the Equal Protection Clause of the Michigan Constitution[6] because only the City's residents who live in areas serviced exclusively by LBWL incur these fees. Count V and Count VI alleged that the franchise fees are unlawful governmental exactions under the Foote Act.[7]

In summer 2021, the parties filed competing motions for summary disposition, both claiming that there remained no genuine issues of material fact. Plaintiff moved for partial summary disposition pursuant to MCR 2.116(C)(10) on Counts I through III. Plaintiff argued that the franchise fee is an unlawful tax that the City imposed on its residents in violation of the Headlee Amendment and MCL 141.91. In the City's motion for summary disposition, brought under MCR 2.116(C)(5), (7), (8), and (10), it sought a judgment of dismissal of all of plaintiff's claims. For Count I, the City argued that plaintiff's Headlee Amendment claim was barred by the applicable one-year period of limitations. The City argued that Counts II and III were indistinct from Count I and that, thus, they too were barred by the Headlee Amendment period of limitations. For Count IV, the City argued that plaintiff could not request monetary damages for an equal-protection violation.

---

[6] Const 1963, art 1, § 2.

[7] 1905 PA 264.

7

Finally, the City claimed Counts V and VI were premised on the Foote Act and, therefore, plaintiff was not a real party in interest and could not enforce the act.

In March 2022, the trial court issued two separate decisions. In its opinion and order regarding plaintiff's partial motion for summary disposition, the trial court concluded that the franchise fee was a tax under the factors identified in *Bolt v Lansing*[8] because the franchise fee had a general revenue-raising purpose as opposed to a regulatory purpose; the franchise fee was not proportionate to the costs of the service provided; and the franchise fee was not voluntary because a consumer would have to choose between paying the fee or not having electricity. The trial court also found that plaintiff was a taxpayer because he was "responsible for paying the franchise fee."

In a separate opinion, the trial court denied the City's motion for summary disposition as to all claims except for Count IV, which was plaintiff's equal-protection claim. In so doing, the trial court rejected the City's period-of-limitations argument. Specifically, the trial court ruled that the limitations period for plaintiff's Headlee Amendment claim was measured from the day the fees were assessed and not the date that the franchise fee was authorized and adopted. Because plaintiff was a taxpayer subject to the franchise fee, plaintiff's Headlee Amendment claim would accrue at the time the tax is due.

Both parties appealed, and the Court of Appeals consolidated the cases.[9] The Court of Appeals issued an unpublished per curiam opinion, reversing the trial court and

---

[8] *Bolt*, 459 Mich at 161-167, 167 n 16.

[9] *Heos v East Lansing*, unpublished order of the Court of Appeals, entered August 17, 2020 (Docket Nos. 361105 and 361138).

remanding the case for entry of an order granting the City's motion for summary disposition on all counts.[10]  Relying on *Morgan v Grand Rapids*,[11] the Court of Appeals held that the franchise fee at issue was legally imposed on LBWL and that, therefore, plaintiff was not a taxpayer for purposes of the Headlee Amendment's period of limitations.[12]  Because the Court of Appeals concluded that plaintiff was instead a mere member of the public, it held that the one-year limitations period established by MCL 600.308a(3) barred plaintiff's Headlee Amendment claim.[13]  Plaintiff filed for leave to appeal in this Court, and we ordered oral argument on the application.

## II. STANDARD OF REVIEW

This Court reviews de novo the grant or denial of summary disposition to determine whether the moving party is entitled to judgment as a matter of law under MCR 2.116(C)(5) (legal capacity to sue), (7) (statute of limitations and governmental immunity), (8) (failure to state a claim upon which relief can be granted), or (10) (no genuine issue of material fact).[14]  The Court reviews the entire record to determine whether a party is entitled to summary disposition.[15]  "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint.  In evaluating a motion for summary disposition brought under this

---

[10] *Heos*, unpub op at 8-9.

[11] *Morgan v Grand Rapids*, 267 Mich App 513; 705 NW2d 387 (2005).

[12] *Heos*, unpub op at 2, 4-6.

[13] *Id*.  MCL 600.308a(3) states that "[a] taxpayer shall not bring or maintain an action under this section unless the action is commenced within 1 year after the cause of action accrued."

[14] See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

[15] *Id*.

subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties" in the light most favorable to the nonmoving party.[16] "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law."[17] The interpretation of a statute of limitations is a question of law, which the Court also reviews de novo.[18]

### III. ANALYSIS OF THE HEADLEE AMENDMENT CLAIM

The Headlee Amendment of the Michigan Constitution provides, in relevant part, as follows:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon.[19]

Although the levying of a new tax without voter approval violates the Headlee Amendment, a charge that constitutes a user fee does not.[20] The trial court ruled that the franchise fee at issue was a tax, that plaintiff was a taxpayer, and that plaintiff brought a timely Headlee Amendment claim. The Court of Appeals concluded that, regardless of whether the fee was a tax, plaintiff was not a taxpayer and, therefore, plaintiff's claim was time-barred by the Headlee Amendment's one-year limitations period. We agree with the

---

[16] *Id*. at 120.

[17] *Id*.

[18] *Collins v Comerica Bank*, 468 Mich 628, 631; 664 NW2d 713 (2003).

[19] Const 1963, art 9, § 31.

[20] See *Bolt*, 459 Mich at 158-159.

10

trial court that the franchise fee constitutes a tax, but we disagree with the Court of Appeals' conclusion that plaintiff is not a taxpayer.

## A. THE FRANCHISE FEE IS A TAX

To determine whether the franchise fee is a tax, the Court must apply the factors laid out in *Bolt*.[21] In that case, a landowner brought an action against the city, alleging that the city's storm water service charge was actually a tax, which required voter approval under the Headlee Amendment.[22] "Generally a 'fee' is 'exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit.' . . . A 'tax,' on the other hand, is designed to raise revenue."[23] To determine whether the storm water service charge was a user fee, as the city claimed, or instead a tax, the Court analyzed the charge under several factors. The first factor requires a valid user fee to have a regulatory purpose and not a general revenue-raising purpose.[24] The second factor requires a user fee to be proportionate to the required costs of the service.[25] And the third factor requires a user fee to be voluntary.[26] These

---

[21] *Id*. at 161-167.

[22] *Id*. at 158.

[23] *Id*. at 161.

[24] *Id*.

[25] *Id*. at 161-162.

[26] *Id*. at 162.

criteria "are not to be considered in isolation," and no single factor is generally dispositive.[27]

Applying the first two factors, the *Bolt* Court first determined that the service charge at issue had a general revenue-raising purpose because, in initiating the service charge, the city sought to fund half of the $176 million cost of implementing a sewer overflow control program over the next 30 years.[28] Second, the *Bolt* Court determined that the service charge was not proportionate to the costs incurred because the service charge was used as an investment for infrastructure and was not used to reasonably offset the costs of a regulatory activity for the individual payer.[29] Third, the *Bolt* Court determined that the service charge was "effectively compulsory" rather than voluntary; it was a compulsory charge given that the property owner had no choice whether to use the storm water service drains and was unable to control the extent to which the service was used.[30]

Analyzing the present case through the *Bolt* framework, we conclude that the franchise fee is a tax because (1) the fee is used for a general revenue-raising purpose, (2) the fee is not proportionate to any costs incurred by the City for LBWL providing electrical services, and (3) the fee is not voluntary. First, it is clear that the franchise fee was used

---

[27] *Id*. at 167 n 16, 168.

[28] *Id*. at 163.

[29] *Id*. at 163-167.

[30] *Id*. at 167-168. "Residential parcels measuring two acres or less are not assessed charges on the basis of individual measurements, but, rather, are charged pursuant to flat rates set forth in the ordinance." *Id*. at 156. Larger residential parcels and other types of parcels are charged on the basis of individual measurements related to the parcel's pervious and impervious areas. *Id*. at 156-157.

for a general revenue-raising purpose. LBWL has remitted this franchise fee to the City at a rate of about $1.4 million per year. This revenue does not correspond with consumer-specific benefits the City provides relating to LBWL's supply of electrical services. In fact, the City provides no benefit, through electricity or otherwise, specific to plaintiff in exchange for payment of the franchise fee. The City has admitted that the 5% charge was chosen on the basis of similar rates charged in other communities, thus the charge lacks a "reasonable relationship . . . between the amount of the fee and the value of [a] service or benefit."[31] Additionally, the City has admitted that the revenue collected under this aspect of the City's agreement with LBWL is placed into the City's general fund and may be used for any purpose the City deems appropriate, such as making payments to the City's pension and OPEB funds.[32] In particular, the City's finance director has stated that the City has diversified its revenue sources, including " 'the franchise fees,' " which has " 'allowed [the City] to make supplemental pension payments[.]' "

---

[31] *Id*. at 161 (citations omitted).

[32] As Lahanas stated in his March 15, 2016 e-mail:

> This year, unfortunately, presents our largest [budgetary] gap in my recollection at $1.6 million[.] This is obviously not completely unexpected, as our 5 year financial forecast indicated. When we first received a five year pension payment forecast from [the Municipal Employees' Retirement System] about two years ago we knew that short of a significant increase in revenue, we would eventually need to reduce staffing across the City, and particularly in public safety. What is different now from two years ago, is the prospect for substantial *increases to revenue from several fronts, including* [*LBWL*] *franchise fees* . . . . If these prospects were not forthcoming we would recommend significant reductions to maintain our reserves. [Emphasis added.]

13

Second, the franchise fee was not proportional to the costs the City incurred for granting LBWL the right to provide electrical services to plaintiff. In fact, the franchise fee imposed by the City did not fund and was not collected for the purpose of providing electrical services. Instead, the revenues generated pursuant to this franchise fee were put into the City's general fund and spent for a variety of purposes unrelated to the provision of any benefit specific to plaintiff. The City has therefore "failed to differentiate any particularized benefits to [the payer] from the general benefits conferred on the public."[33]

Third, the franchise fee was not voluntary. If the consumers did not pay the fee, their electricity, which is a basic human need, could have been shut off. Furthermore, plaintiff does not have the ability to contract for electricity with another utility provider. Consumers Energy and LBWL are the only two electric utility providers in the City, and Consumers Energy only services those parts of the City that LBWL does not. Therefore, if an electric utility consumer lives in an area serviced by LBWL and does not want to pay the franchise fee the City requires, the consumer will risk losing electricity. Consequently, plaintiff effectively has no option but to pay this compulsory "fee." Applying the *Bolt* factors, we conclude that the franchise fee at issue is a tax.[34] Because the City's voters

---

[33] *Bolt*, 459 Mich at 166.

[34] It is pertinent that Consumers Energy, the other electric utility provider in the City, refused to pay a franchising fee and was still allowed to service areas of the City. In *Bolt*, the Court noted that the charge in that case applied to properties even though they were serviced by entirely different improvements not financed by the charges. See *id*. at 165 ("Under the ordinance, these property owners are charged the same amount for storm water service as the twenty-five percent of the property owners who will enjoy the full benefits of the new construction."). Therefore, the fees in *Bolt* were not based on the cost of services being provided to the individual payers. In the same way, the City's willingness to impose a charge on electricity payers solely based on the provider demonstrates that it is not tied to the true cost or use of a service by the payers. Stated another way, *Bolt* involved the

14

were never offered an opportunity to adopt the Ordinance approving the franchise fee by majority vote, it runs afoul of the Headlee Amendment.

## B. PLAINTIFF IS A TAXPAYER

Given our conclusion that the franchise fee is a tax, we next consider whether plaintiff is a taxpayer of the tax or mere member of the public, i.e., whether plaintiff bore the "legal incidence"[35] of the fees from the franchise agreement between the City and LBWL. This distinction is significant here because it determines the point at which plaintiff's claim accrued, which in turn is critical to whether plaintiff's claim was brought within Headlee's statute of limitations.

In *Taxpayers for Constitutional Taxation v Wayne Co*, this Court held that taxpayers may bring a Headlee Amendment claim, to sue for a refund, within one year after the wrongfully imposed tax is due.[36] If, however, the plaintiff sued only on behalf of the public, the cause of action accrued at the time the resolution was passed and suit could only be brought within one year of the fee's enactment.[37] The *TACT* Court explained that members of the public must abide by this earlier accrual date because "the only wrong that

---

imposition of a charge on those who weren't covered or benefited by the project, and here, the City excluded from the charge individuals who were provided the same benefits and services as those who did pay.

[35] *Fed Reserve Bank of Chicago v Dep't of Revenue*, 339 Mich 587, 597; 64 NW2d 639 (1954) (explaining that the "legal incidence" falls upon the person who "is required by law to pay the tax").

[36] *TACT*, 450 Mich at 123-124.

[37] *Id*. at 124 n 7 ("[T]he only type of Headlee claim that would accrue at the time the resolution is passed is a claim brought merely on behalf of the public, as opposed to a claim brought by a taxpayer who has been or is about to be subject to the tax.").

could give rise to a cause of action is the enactment of the resolution—an action that is not continuing in nature."[38]  Additionally, if a plaintiff is not a taxpayer and instead sues as a mere member of the public, the plaintiff cannot sue for a refund of any tax because a member of the public would not suffer any injury, a "requisite for a damage action."[39] *TACT* therefore clarified that, if a plaintiff is a taxpayer, they may bring a Headlee Amendment claim to recover tax payments within one year after the wrongfully imposed tax is due; however, if a plaintiff is a member of the public, they cannot recover any tax payments that others may have made and Headlee's one-year limitations period runs from the date the ordinance authorizing the wrongful tax was enacted.

To determine whether plaintiff is a taxpayer or mere member of the public, we can compare and contrast the present case to *Morgan v Grand Rapids*.[40]  In *Morgan*, like in this case, the relevant parties involved a plaintiff (and a proposed class), a defendant city (Grand Rapids), and a third-party utility provider (Comcast).[41]  The plaintiff cable subscriber brought an action against the city, seeking a refund for the 5% "franchise fee" the utility provider charged the plaintiff and paid to the city, arguing that the franchise fee was an illegal tax levied without voter approval.[42]  The plaintiff argued that her Headlee

---

[38] *Id*.

[39] *Id*.

[40] *Morgan*, 267 Mich App 513.

[41] *Id*. at 514.

[42] *Id*.

16

Amendment claim was timely because the claim accrued when she received her cable bill each month.[43]

The *Morgan* panel disagreed with the plaintiff and held that this 5% franchise fee, which the city was authorized to charge Comcast by the federal Cable Communications Policy Act,[44] did not render the plaintiff the payer of the city's charge: the act "allows cable providers to list separately in their billing statements the amount representing the subscriber's portion of the franchise fee."[45] The *Morgan* panel determined that the plaintiff was not the payer of the city's charge for the following reasons: (1) merely listing the charge on a separate line did not render the plaintiff the payer of the charge; (2) the plaintiff paid her bill to Comcast, the entity with which she contracted; and (3) the city had no recourse against the plaintiff for any unpaid portion of her bill, making the case analogous to a sales-tax scenario in which a seller passes the sales-tax obligation on to the consumer but still remains primarily liable for the payment of the tax.[46] In holding that the obligation to pay the fees fell primarily on Comcast, and Comcast then passed the burden of the fee onto its consumers, the *Morgan* panel determined that the plaintiff was not the taxpayer.[47] Relying on *TACT*, *Morgan* then held that, as a mere member of the public, the plaintiff's

---

[43] *Id.*

[44] 47 USC 521 *et seq.*

[45] *Morgan*, 267 Mich App at 514-515.

[46] *Id.* at 515 ("In those situations, courts have generally held that the sellers must challenge the illegal taxes directly, and the consumers have no standing to pursue tax relief unless the tax burden potentially interferes with a federal right.").

[47] *Id.* at 515-516 ("In short, when the tax obligation falls primarily on the retailer, 'retailers are considered to be considered the taxpayers.'") (citation omitted).

Headlee Amendment claim accrued when the city first imposed the franchise fee on Comcast.[48] Because the plaintiff failed to bring her Headlee Amendment claim within one year from that date, the Court of Appeals held that the plaintiff's claim was time-barred.[49]

Accordingly, if plaintiff is deemed a taxpayer in this case, his claims are timely, and he may seek to recover fees assessed and due within one year of the filing of this lawsuit and any subsequent fees. However, if plaintiff is only a member of the public, his Headlee Amendment claim is time-barred because he did not commence this action until 2020, three years after the fee was authorized by the Ordinance.

We conclude that the Court of Appeals erred by holding that *Morgan* controls this case and by holding that plaintiff is not a taxpayer. In *Morgan*, the federal Cable Communications Policy Act expressly allowed the city to charge Comcast the 5% fee, and the act also allowed Comcast "to list separately in their billing statements the amount representing the subscriber's portion of the franchise fee."[50] Unlike *Morgan*, where a federal statute allowed the city to charge a franchise fee on the cable provider and the provider chose to pass the fee on to its customers, the City's arrangement here is of a different kind.[51] In this case, the City has attempted to enlist LBWL in collecting a disguised tax, and it has done so in violation of the Headlee Amendment. Moreover, the

---

[48] *Id*. The Court of Appeals in *Morgan* thus rejected the plaintiff's claim that her Headlee Amendment claim accrued on the date she received her Comcast bill. *Id*. at 514.

[49] *Id*. at 516.

[50] *Id*. at 514-515.

[51] Because this case is distinguishable from *Morgan*, we need not address or consider whether the Court of Appeals' ultimate holding in *Morgan* was correct.

cable provider in *Morgan* had a legal responsibility to pay the franchise fee. Here, LBWL has no legal responsibility whatsoever to pay the franchise fee to the City.

Although *Morgan* is clearly distinguishable, *Morgan* provides helpful considerations in determining whether a party is a taxpayer when a pass-through charge is imposed by a local government and collected by a nongovernmental entity (such as the utility). In *Morgan*, the Court of Appeals discussed the following considerations: (1) whether the charge obligation falls primarily on the consumer or retailer (i.e., whether the consumer or the utility bears the legal incidence of the charge); (2) whether the local government has any recourse against the consumer for failing to pay the franchise fee; (3) whether the consumer has a contract with the utility or local government; (4) whether the consumer pays the challenged charge to the utility or local government; and (5) whether the local government or utility places the challenged charge on the consumer's bill. These considerations are also relevant to determining which party is the taxpayer because they examine who is legally responsible to pay the tax as well as the circumstances concerning the payment of the tax.

Applying this framework here, we conclude that plaintiff bears the legal incidence and obligation to pay the franchise fee, and LBWL does not. Although the City cannot sue plaintiff for failing to pay the franchise fee, plaintiff is responsible for paying this charge in other ways. For instance, if an LBWL consumer, such as plaintiff, does not pay the franchise fee, their electricity will likely be shut off. Furthermore, plaintiff does not have the ability to contract for electricity with another utility provider. Therefore, if an electric consumer lives in an area serviced by LBWL and does not want to pay the franchise fee

19

the City requires, the consumer risks losing electricity. Plaintiff has no option but to pay this compulsory "fee."

It is also clear that plaintiff bears the legal incidence of paying the challenged charge because it is clear that LBWL does not have the obligation of paying the tax. Unlike in *Morgan*, where Comcast was legally responsible for the franchise fee regardless of whether the customers ultimately paid that fee, LBWL has no such legal responsibility for the franchise fees here. This is a very significant consideration that weighs heavily in favor of the conclusion that plaintiff is a taxpayer. As previously noted, during negotiations, an LBWL manager "stated that there is a concern that this fee could be illegal and that the [LBWL] has been put on notice. Should the board choose to go forward with the Franchise Fee the [LBWL] would only be the collection agency for the City of E. Lansing." In accordance with LBWL's position, the franchise agreement did not require LBWL to pay the franchise fee. Instead, the franchise agreement states that LBWL shall "*collect and remit*" the franchise fee to the City and that "[s]uch fee *will* appear on the corresponding energy bills."[52] Further, "to the extent that [LBWL] is precluded from collecting such franchise fees[,] remittance to the City will cease." The franchise agreement demonstrates that LBWL was serving only as a conduit in the City's taxation of East Lansing LBWL consumers. The franchise agreement also states that the "City shall at all times keep and save [LBWL] harmless" and that LBWL would collect a 0.5% administrative fee from the City for collecting the franchise fee. These provisions make clear that LBWL has no obligation itself to pay the City such fees.

---

[52] Emphasis added.

Justice BERNSTEIN asserts that plaintiff is not responsible to pay the franchise fee. This is wrong. Specifically, Justice BERNSTEIN fails to acknowledge that, unlike in *Morgan* where Comcast *chose* to pass the cost of the franchise fee onto its customers, LBWL is *required* by the agreement to place the franchise fee on the customer's bill. And if LBWL "is precluded from collecting such franchise fees[,] remittance to the City will cease." This is not a scenario in which the utility provider "merely passed the charge's burden onto plaintiff's shoulders."[53] Instead, the franchise agreement required customers of LBWL to bear the responsibility of paying the franchise fee, which is an unlawful tax.

While noteworthy that plaintiff has a contract that provides for electrical service from LBWL and, per that contract, plaintiff pays the fee to LBWL, it is not material that plaintiff does not pay the fee directly to the City. The City cannot escape liability merely by inserting a collection agent who shall "collect and remit to the City a franchise fee in an amount of five percent (5%) of the revenue" from its consumers to the City. To condone a structure whereby a city can outsource taxing power to a third-party contractor as a nongovernmental fee would create a massive loophole in the Headlee Amendment and its constitutional protections. If such a practice were allowed under Headlee, cities could simply contract with nongovernmental agencies such as LBWL, which may be deeply connected to City government, to collect revenue the cities could not otherwise collect themselves.

Finally, although not dispositive, the City requires that the challenged fee be placed on the consumer's bill. Unlike in *Morgan*, where Comcast was charged by the city and

---

[53] *Morgan*, 267 Mich App at 515.

Comcast *chose* to pass the fee onto customers, LBWL is required under a legal agreement to put this fee onto the consumer's bill. Section 2 of the Ordinance states that "[s]uch fee [i.e. the franchise fee] *will appear on the corresponding energy bills.*"[54] This express, mandatory language imposed by the City requires LBWL to charge the franchise fee to the consumers. The consumers must pay this fee in addition to their normal bill, which also suggests that the end users are the ones who bear the legal incidence of paying the fee. Thus, the City taxed its citizens through LBWL while, in *Morgan*, the city of Grand Rapids charged Comcast pursuant to federal law.

A holistic review of these considerations reveals that plaintiff is the taxpayer of the franchise fee that is collected and remitted to the City. Read as a whole, the Ordinance requires LBWL to include the fee on the consumers' bills, it requires LBWL to collect and remit such fee, it holds LBWL harmless, and it pays LBWL a 0.5% administrative fee as compensation to act as the City's tax collector by adhering to the City's requirement that the fee shall be placed on the consumers' bills and remitted to the City. This is clearly a tax imposed by the City on taxpayers, who are also consumers of LBWL. More difficult cases may arise where a tax is placed on a party and that third party chooses to pass the fee along to another. Questions may arise when it is difficult to determine who has the legal obligation to pay the fee or when there are issues of traceability. Such is not the case here: the City clearly required the consumers of LBWL to pay the fee to LBWL, which was required by contract to collect and remit such taxes to the City.

---

[54] Emphasis added.

22

## IV. CONCLUSION

Applying the *Bolt* factors, we hold that the franchise fee is a tax. We further hold that plaintiff is a taxpayer and not a mere member of the public. Accordingly, as stated in *TACT*, plaintiff may bring a Headlee Amendment claim for taxes wrongfully imposed within one year of the filing of this lawsuit. We reverse the judgment of the Court of Appeals as to whether plaintiff is the taxpayer and remand this case to the trial court for further proceedings. In all other respects, plaintiff's application for leave to appeal is denied.

Brian K. Zahra
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

23

STATE OF MICHIGAN

SUPREME COURT

JAMES HEOS, Individually and on Behalf
of All Others Similarly Situated,

      Plaintiff-Appellant,

v                                 No. 165763

CITY OF EAST LANSING,

      Defendant-Appellee.

_____

BERNSTEIN, J. (*concurring in part and dissenting in part*).

I join the majority opinion to the extent that it concludes that the franchise fee at issue is a tax. However, I disagree with the majority's conclusion that plaintiff James Heos is a taxpayer, and I dissent in this regard. I would hold that because plaintiff was not a taxpayer, his claims are time-barred under MCL 600.308a(3).[1] I would therefore affirm the Court of Appeals' holding granting summary disposition in favor of defendant, the city of East Lansing (the City).

## I. FACTS AND PROCEDURAL HISTORY

This case involves an agreement between the City and an electric utility company, the Lansing Board of Water and Light (the LBWL), to impose a franchise fee on the City's consumers of electricity. Essentially, the LBWL collected a franchise fee pursuant to a franchise agreement with the City. According to this agreement, the LBWL agreed to

---

[1] MCL 600.308a(3) states, "A taxpayer shall not bring or maintain an action under this section unless the action is commenced within 1 year after the cause of action accrued."

"collect and remit to the City a franchise fee in an amount of five percent (5%) of the revenue, excluding sales tax from the retail sale of electric energy . . . ." This fee would appear on consumers' energy bills. The franchise fee was to be paid by the LBWL to the City for the use of the City's streets, public places, and other facilities. The franchise fee was imposed pursuant to a city ordinance passed in June 2017. In September 2017, the LBWL began paying the franchise fee to the City. In return, the LBWL received from the City a 0.5% fee as compensation.

In April 2020, plaintiff filed the complaint at issue on his own behalf and on behalf of others similarly situated, alleging, in relevant part, that the franchise fee at issue violated Article 9, § 31 of Michigan's 1963 Constitution (the "Headlee Amendment").[2] The parties filed competing motions for summary disposition. The trial court held that the franchise fee here was a tax that had not been approved by a majority of voters and that it therefore violated the Headlee Amendment. The Court of Appeals reversed in an unpublished decision, holding that plaintiff's claims were barred by the statute of limitations for Headlee Amendment claims under MCL 600.308a. *Heos v East Lansing*, unpublished per curiam opinion of the Court of Appeals, issued April 13, 2023 (Docket Nos. 361105 and 361138), pp 3-6. Specifically, the Court of Appeals concluded that plaintiff was not a taxpayer, relying on *Morgan v Grand Rapids*, 267 Mich App 513; 705 NW2d 387 (2005).

_____

[2] Plaintiff also raised claims under MCL 141.91; the Equal Protection Clause of the Michigan Constitution, Const 1963, art 1, § 2; and the Foote Act, 1905 PA 264. The majority does not discuss these other claims and only reverses the Court of Appeals' decision regarding plaintiff's Headlee Amendment claim. The majority denied plaintiff's application for leave to appeal in all other respects. While I question the majority's decision to deny leave on these other issues, I limit my dissent to my disagreement with the majority's resolution of plaintiff's Headlee Amendment claim.

2

*Heos*, unpub op at 2-6. Because the franchise fee was passed by ordinance more than one year before plaintiff filed suit, the Court of Appeals concluded that the one-year statute of limitations under MCL 600.308a(3) barred plaintiff's Headlee Amendment claim. *Id*. at 5. The Court of Appeals therefore reversed the trial court and remanded the case to the trial court, directing the court to enter an order granting summary disposition in favor of the City. *Id*. at 8-9. Plaintiff sought leave to appeal in this Court, and we ordered oral argument on the application. *Heos v East Lansing*, 513 Mich 1066 (2024).

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). An argument that a claim is barred by the statute of limitations is brought under MCR 2.116(C)(7). This Court also reviews "questions of statutory construction de novo as a question of law." *Herald Co v Bay City*, 463 Mich 111, 117; 614 NW2d 873 (2000). Questions of constitutional law are also reviewed de novo. *Bauserman v Unemployment Ins Agency*, 509 Mich 673, 686-687; 983 NW2d 855 (2022).

## III. PLAINTIFF'S HEADLEE AMENDMENT CLAIM

Plaintiff raises a claim under the Headlee Amendment, which "is the popular name for Const 1963, art 9, §§ 25-34." *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 121 n 2; 537 NW2d 596 (1995). These constitutional provisions were designed to place specific limitations on state and local revenues and to control public spending. See *Bolt v Lansing*, 459 Mich 152, 160; 587 NW2d 264 (1998). Specifically,

3

Article 9, § 31 prohibits local governments from levying new taxes or increasing existing taxes above specified rates without the electorate's approval. Const 1963, art 9, § 31.

After the Headlee Amendment became law, the Legislature passed MCL 600.308a(3), 1980 PA 110, which established a one-year period of limitations for Headlee Amendment claims. This Court has held that a Headlee Amendment claim for a taxpayer seeking a refund of an unlawful tax "accrues at the time the tax is due," for example, the due date of a taxpayer's utility bill. *Taxpayers Allied for Constitutional Taxation*, 450 Mich at 123. But individuals can also bring Headlee Amendment claims on the public's behalf. *Id*. at 124 n 7. When an individual brings a claim on behalf of the public, "the right to bring suit expires one year after the alleged Headlee violation." *Id*. at 125 n 7. In other words, a cause of action for a Headlee Amendment claim brought by an individual on the public's behalf accrues when the local government imposes the charge in question, not when the tax is due. See *id*. at 124 n 7; see also *Morgan*, 267 Mich App at 515. This is significant here because, as the majority states,

> if plaintiff is deemed a taxpayer in this case, his claims are timely, and he may seek to recover fees assessed and due within one year of the filing of this lawsuit and any subsequent fees. However, if plaintiff is only a member of the public, his Headlee Amendment claim is time-barred because he did not commence this action until 2020, three years after the fee was authorized by the Ordinance.

In order to address plaintiff's claim that the franchise fee at issue violates the Headlee Amendment, the majority considers two questions: (1) whether the franchise fee is a tax, and if so, (2) whether plaintiff is a taxpayer. The majority here concludes that the franchise fee at issue in this case is a tax. I agree with the majority's analysis on this issue.

4

What I disagree with is the majority's conclusion that plaintiff is a taxpayer, and I would instead conclude that plaintiff is a member of the public.

To address whether a party is a taxpayer, we must determine whether plaintiff bears the "legal incidence" of the tax. *Fed Reserve Bank of Chicago v Dep't of Revenue*, 339 Mich 587, 597; 64 NW2d 639 (1954). The party bearing the legal incidence of a tax is the party who "is required by law to pay the tax[.]" *Id*.

I agree with the Court of Appeals' analysis, and its reliance on *Morgan*, 267 Mich App at 514-516, in concluding that plaintiff did not bear the legal incidence of the franchise fee; rather, the LBWL bore the legal incidence, and it is therefore the taxpayer here. In *Morgan*, a cable TV subscriber brought an action against Grand Rapids to recover fees that a cable company charged all consumers, alleging that the fee violated the Headlee Amendment. *Id*. at 514. The cable company put this fee in place to recoup a franchise fee that the cable company paid to Grand Rapids. *Id*. The Court of Appeals determined that because the cable company bore the legal incidence of the franchise fee, the cable company was the taxpayer, not the plaintiff. *Id*. at 515-516. As a result, because the plaintiff was not a taxpayer, the plaintiff's claim was time-barred because it was not brought within one year of the enactment of the franchise fee. *Id*.

I think that the facts of this case mirror those of *Morgan*, and the same analysis should follow here. In both cases, a consumer paid a franchise fee to a utility company, not to the defendant municipality, and the defendant municipalities had no recourse against the plaintiffs for unpaid bills. Even though the utility providers passed the franchise fees onto the consumers, that did not make the plaintiffs taxpayers, just as a consumer is not a taxpayer if a retailer passes the burden of a sales tax onto the consumer. *Id*. at 515; see

5

also *World Book, Inc v Dep't of Treasury*, 459 Mich 403, 407-408; 590 NW2d 293 (1999); *Smis v Firestone Tire & Rubber Co*, 397 Mich 469, 474; 245 NW2d 13 (1976). As the Court of Appeals stated in *Morgan*, "when the tax obligation falls primarily on the retailer, retailers are considered to be the taxpayers." *Morgan*, 267 Mich App at 515 (quotation marks and citation omitted). I would have similarly concluded that when a utility is legally responsible for paying a defendant municipality, the legal incidence of the fees falls primarily on the utility, not the consumer, because the utility is the entity that is *required by law* to pay the fee. See *Fed Reserve Bank of Chicago*, 339 Mich at 597.

Here, the LBWL was legally responsible for paying the City the franchise fee at issue. It is undisputed that the LBWL, not plaintiff, was required to pay the franchise fee to the City under the franchise agreement and the ordinance as a condition of the City granting the LBWL a franchise. The tax obligation here therefore falls primarily on the LBWL because it, not plaintiff, is legally required to remit the fee to the City. That the economic burden fell on plaintiff here does not make him a taxpayer. See *id*. Therefore, I would conclude that the LBWL is the taxpayer, not plaintiff. As a result, plaintiff is a member of the public who was required to commence his lawsuit within one year after the franchise fee was authorized. Here, the franchise fee was enacted in 2017. Plaintiff's complaint was filed nearly three years later in 2020. Therefore, plaintiff's complaint was not timely filed, and his claims are time-barred under MCL 600.308a(3).

The majority attempts to distinguish *Morgan*, rather than confront the validity of *Morgan*'s holding. These efforts are unsuccessful. First, the majority attempts to distinguish *Morgan* by stating that the electricity provider in *Morgan* had a legal responsibility to pay the franchise fee, whereas here, the LBWL had no legal responsibility to pay the franchise fee.

6

But as the Court of Appeals majority stated, "it appears that the LBWL *is* 'independently liable' to the City for the franchise fees." *Heos*, unpub op at 5. If the LBWL did not pay the franchise fee to the City, the City could bring a breach-of-contract claim to recover the fees or revoke the LBWL's franchise agreement. Therefore, the LBWL does have a legal responsibility to pay the franchise fee here, or else face any number of remedies at the City's disposal.

The majority also attempts to distinguish *Morgan* by arguing that a federal license in the 1984 federal Cable Communications Policy Act, 47 USC 521 *et seq.*, allowed the Grand Rapids to skirt the Headlee Amendment, whereas no equivalent federal act applies here. However, the Court of Appeals in *Morgan* did not rely on the Cable Communications Policy Act in its analysis when concluding that it was the cable provider that paid the fee and not the customer. *Morgan*, 267 Mich App at 514-515. As the Court of Appeals in *Morgan* noted, even though the federal Cable Communications Policy Act permitted the fee at issue and allowed cable providers to list the fee separately in customers' billing statements, this did not render the plaintiff the payer of the fee and therefore a taxpayer. *Id*. Rather, several other factors rendered the cable company the taxpayer. Specifically, the "plaintiff paid her entire bill according to her contractual obligation to [the cable company], which paid the charge to [Grand Rapids] according to the franchise agreement." *Id*. at 515. Further, Grand Rapids had no recourse against the plaintiff for any unpaid portion of her bill, and it was the cable company rather than the plaintiff that paid the fee directly to Grand Rapids. *Id*. The Court of Appeals in *Morgan* stated that because the cable provider paid the fee in *Morgan* "and merely passed the charge's burden onto plaintiff's shoulders," the cable company was the taxpayer, not the plaintiff. *Id*. Thus, the fact that the Cable Communications Policy Act

7

authorized this fee does not change the analysis regarding whether the *plaintiff* was a *taxpayer*; these are separate and distinct legal questions.

The majority's efforts to distinguish *Morgan* on these bases are therefore unsuccessful. Despite arguing that *Morgan* is distinguishable, and thus presumably inapplicable, the majority then applies the *Morgan* analytical framework in coming to its conclusion. This treatment of *Morgan* is unnecessarily confusing. I disagree with the majority, as I would have simply applied *Morgan* and concluded that plaintiff is not a taxpayer because he does not bear the legal incidence of the franchise fee.

## IV. CONCLUSION

I agree with the majority's conclusion that the franchise fee is a tax. However, I disagree with the majority's conclusion that plaintiff is a taxpayer and would conclude that the Court of Appeals correctly applied *Morgan* in holding that plaintiff here was not a taxpayer, but a member of the public challenging the franchise fee on behalf of the public. As such, plaintiff had one year after the enactment of the franchise fee to bring his complaint under MCL 600.308a(3). Because plaintiff's complaint was filed almost three years after the franchise fee was enacted, his claims are thus time-barred under MCL 600.308a(3). Therefore, I would affirm the Court of Appeals' holding granting summary disposition to the City.

For these reasons, I concur in part with, and dissent in part from, the majority's opinion.

Richard H. Bernstein

CLEMENT, C.J., did not participate because of a potential interest in the controversy.

THOMAS, J., did not participate because the Court considered this case before she assumed office.